**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Apache Stronghold, | No.  CV-21-00050-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| United States of America, et al., | |
| Defendants. | |

Before the Court is Plaintiff Apache Stronghold's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7). Because Plaintiff fails to show immediate injury, the Motion will be denied to the extent Plaintiff seeks a TRO.

Plaintiff seeks a TRO to prevent Defendants—the United States of America; the U.S. Department of Agriculture ("USDA"); and the USDA Forest Service, Tonto National Service—from publishing a "Final Environmental Impact Statement" ("FEIS") on the "Southeast Arizona Land Exchange and Resolution Copper Mine Project." (Doc. 7 at 2).

Plaintiffs allege the "mere act of publication will immediately enable the Forest Service to attempt to convey a 2,422-acre parcel of 'Forest Service land' to an entity owned entirely by foreign mining corporations, Rio Tinto and BHP, pursuant to a mandate in Section 3003 of the 'National Defense Authorization Act of 2015 ('the NDAA')." (Doc. 7 at 3). However, Plaintiffs allege the NDAA "was based on grave and profoundly erroneous assumption[s]," and in fact "[e]vidence shows United States does not own that land," but rather it is "Western Apache land under the 1852 Treaty of Santa Fe." (Doc. 7 at 4).

Defendants intend to publish the FEIS on January 15, 2021. (Doc. 7 at 3).

Federal Rule 65(b), which governs temporary restraining orders and preliminary injunctions, provides in relevant part:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The "stringent requirements" of immediate and irreparable injury "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438–39 (1974). Accordingly, ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*

Here, Plaintiff's counsel has affirmed in a declaration that it made multiple attempts to provide Defendants with notice of this action. Specifically, on January 13, 2021, counsel "called the U.S Attorney's Office" and "provided the receptionist with the case number, and [his] contact information, and indicated that [he] wished to provide the U.S. Attorney's Office with a copy of the lawsuit, and to discuss the matter" but that he "did not receive a return call." (Doc. 7-2). When counsel called the USAO's Phoenix office later the same day, "[t]here was no answer, and there was no voice mail available." (Doc. 7-2 at 2).

Plaintiff's counsel does not aver in its declaration the reasons why notice should not be required, as is required by Rule 65. Even if he did, however, Plaintiff also fails to articulate reasons in its Complaint why issuing the TRO without giving Defendants an opportunity to respond would result in "immediate and irreparable injury." For that reason, the Court will deny the TRO.

The sale of the land at issue (and the subsequent mining project) is the action that will allegedly harm Plaintiff, not the publication of the FEIS. *See, e.g.*, (Doc. 7-1 at ¶ 12) ("To have a land exchange occur at Oak Flat and to have destruction of this spiritual place by mining—these actions will have a direct, negative effect on me and members of the Holy Ground group."). Rather, the publication of the FEIS is but a threshold requirement for Defendants to sell the land. *See, e.g.*, (Doc. 1 at ¶ 32) ("The FEIS is the precursor act for the land exchange mandate."); (Doc. 1 at 12-13, 22 n.8) (citing a statement of the acting supervisor of Tonto National Forest indicating that the publication is "a necessary step to complete the land exchange"). But while the publication of the FEIS may be immediate, Plaintiff has not shown that the sale of the land is.

For example, Plaintiff alleges in the Complaint that the "publicly stated purpose of the Defendants is to present a concrete plan and act to enable the conveyance in the immediate future of federally-managed land" including the land at issue. (Doc. 1 at ¶ 3). But Plaintiff does not point to any such concrete plan. Instead, it presents only conclusory allegations that Defendants *might*, maybe at some point soon, attempt to sell the land. Plaintiff also alleges that "[e]vidence exists" that Defendants will sell the land "quite possibly as soon as January 15, 2021." (Doc. 1 at ¶ 6). Again, Plaintiff does not indicate what this evidence is, and the language "quite possibly" only casts more doubt on the immediacy of the sale. *See also* (Doc. 7 at 5) (alleging that FEIS "*can* then be immediately followed upon publication by unimpeded agency action to attempt a conveyance") (emphasis added). While the publication of the FEIS is a threshold requirement for Defendants to sell the land at issue, it does not mean, nor has Plaintiff shown any facts to support, that Defendants will immediately thereafter sell the land.

To the contrary, according to the USDA's website, the publication of the FEIS will "initiate the 60-day window in which the lands would need to exchange." *See* United States Dep't of Agriculture Forest Service, *Resolution Copper Timeline*, https://www.fs.usda.gov/detail/r3/home/?cid=FSEPRD858166 (hereinafter "Resolution Copper Timeline") (last visited January 14, 2021). Plaintiff admits this in the Complaint.

*See, e.g.*, (Doc. 1 at ¶ 31) ("Section 3003 of the NDAA mandates that the Southeast Arizona Land Exchange shall be done no later than sixty (60) days after the publication of the FEIS.") Accordingly, it could take up to 60 days for Defendants to sell the land—weeks after the TRO would expire and be converted to a preliminary injunction. Plaintiff provides no "specific facts" for this Court to believe it will be sold any sooner, as Rule 56 requires.

The Court recognizes the anxiety that having one's sacred land taken from them, and used for purposes that run counter to their spiritual beliefs, might cause. But so too must the Court recognize Defendants' right to respond to Plaintiff's allegations against them, absent a compelling need to the contrary. *See, e.g.*, *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requiste [sic] of due process of law is the opportunity to be heard."). Without a showing of immediate and irreparable injury, the issuance of a TRO is unwarranted. Instead the parties will brief, and the Court will rule on, the Motion for Preliminary Injunction in ordinary course. However, in light of the 60-day timeframe, the Court will set expedited briefing.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7) is **denied in part** to the extent that it requests issuance of a Temporary Restraining Order.

**IT IS FURTHER ORDERED** that, no later than **January 15, 2021**, Plaintiff must provide Defendants with a copy of the following: (1) the Complaint; (2) the Motion for Preliminary Injunction; and (3) this Order. Plaintiff shall further file with the Court a notice indicating when and how notice was provided.

**IT IS FURTHER ORDERED** that Defendants have until **January 21, 2021** to respond to the Motion for Preliminary Injunction (Doc. 7).

**IT IS FURTHER ORDERED** that Plaintiff shall have until **January 25, 2021** to file a reply in support of its Motion for Preliminary Injunction (Doc. 7).

**IT IS FURTHER ORDERED** that the Court will hold a hearing on the Motion for Preliminary Injunction (Doc. 7) on **January 27, 2021 at 9:00 a.m.** The hearing shall be held telephonically, and the parties shall jointly email Logan_Chambers@azd.uscourts.gov

by **January 25, 2020** to obtain the call-in information.

      **IT IS FURTHER ORDERED** that the parties shall file a Joint Notice by **January 20, 2021**, indicating whether the motion may be decided on the briefing and argument of counsel alone.

      Dated this 14th day of January, 2021.

Honorable Steven P. Logan
United States District Judge