Michael V. Nixon, *pro hac vice*
(OR Bar # 893240)
101 SW Madison Street # 9325
Portland, OR 97207
Telephone: 503.522.4257
Email: michaelvnixon@yahoo.com

Clifford Levenson (AZ Bar # 358287)
5119 North 19th Avenue
Suite K
Phoenix, AZ 85015
Telephone: 602.258.8989
Fax: 602.544.1900
Email: cliff449@hotmail.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Phoenix Division

| | | |
|---|---|---|
| Apache Stronghold, </br>     a 501(c)(3) nonprofit organization, </br> </br>         Plaintiff, </br>   v. </br> </br> United States of America, </br> </br> Sonny Perdue, Secretary, U.S. Department </br>     of Agriculture (USDA), </br> </br> Vicki Christensen, Chief, USDA Forest Service, </br> </br> Neil Bosworth, Supervisor, USDA Tonto </br>     National Forest, </br> </br>     and </br> </br> Tom Torres, Acting Supervisor, USDA </br>     Tonto National Forest, | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | No. 2:21-cv-00050-PHX-SPL </br> </br> </br> **REPLY MEMORANDUM** </br> **IN SUPPORT OF MOTION** </br> **FOR PRELIMINARY** </br> **INJUNCTION** </br> </br> </br> (Oral Argument Requested) |

|   |   |
|---|---|
|   | ) |
| Defendants. | ) |
|   | ) |

Plaintiff has been substantially prejudiced by the Defendants' exceedingly overlength 30-page Response memorandum to which the Plaintiff must reply both within three days and within the 11-page limit per the local rules. Plaintiff concedes nothing and waives no arguments, reserving all rights. There is a Joint Motion currently pending before the Court which may provide the Plaintiff the ability to supplement this Reply and more fairly and thoroughly address Defendants' extensive Response.

Defendants' response attempts to have the Apache Stronghold denied its constitutional rights to redress and remedy, and due process, and the free exercise of religion, claiming incorrectly that they lack standing to enforce the treaty rights and aboriginal title which inure to its Western Apache members directly pursuant to the 1852 Treaty of Santa Fe between the United States and the Apache Nations. In furtherance of their long-running schemes to deprive the Western Apaches of possession and ownership rights to the Apache land containing Oak Flat, the Defendants present the Court with many distractive red herring arguments and sophistry, and rely on incorrect presentations of the current controlling law and precedent on the Religious Freedom Restoration Act and the First Amendment right of the Apache Stronghold's members' free exercise of religion. The Defendants are effectively trying to drive the Apaches to their deaths off a cliff once again like they did at Apache Leap in the late 19th century.

**STANDARD OF REVIEW**

In the Ninth Circuit, the 'serious questions' approach "survives *Winter* when applied as part of the four-element *Winter* test. That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Controlling case law in the Ninth Circuit is clear that a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

If the land exchange conveyance of the Oak Flat parcel is allowed to occur, Plaintiff and its members will lose the protections of the First Amendment's constitutional guarantee of the free exercise of religion and the statutory protections of RFRA because the land would then be in the hands of a private party. *Hall v. American Nat. Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996), *cert. denied*, 519 U.S. 1010 (1996)(Congress did not intend to have RFRA extend beyond the reach of 1st Amendment liability). This is an irreparable injury and no money damages can compensate Apache Stronghold and its members.

2. <u>There Are Serious Questions Going to the Merits</u> – The first of the several serious questions is most serious: "Does the United States really own the land that it proposes to exchange?" Evidence shows that the answer is "No." See Declaration of John

R. Welch, Ph.D., at p.4, paragr 11. The Western Apaches still hold their aboriginal title to the land that contains the Oak Flat parcel, as the Plaintiff asserts in the Complaint and in the motion for injunctive relief. Plaintiff Apache Stronghold includes many Western Apache members of the San Carlos Apache and White Mountain Apache Tribes. The Defendants bear the burden of proving by clear and convincing evidence that the United States has the right of ownership to convey the land.[1] A trial is necessary to determine the factual answer to that most serious question. Depriving Apache Stronghold of this right in the land is an irreparable injury and no money damages can compensate Apache Stronghold and its members. The balance of hardships tips sharply in favor of the Plaintiff, and the injunction is in the public interest because the public interest in having the Defendants honor its 1852 treaty with the Apaches and respect their aboriginal title rights is the paramount compelling governmental and public interest, and predates this proposed copper mine and the statute presuming any rights in the land to give away to a private mining conglomerate.

## THE PLAINTIFF HAS SOLID STANDING

Wendsler is a descendant of Mangas Coloradus, one of the Apache signatories of the 1852 Treaty. See Declaration of Wendsler Nosie, Sr., Ph.D. Apache Stronghold co-founder, Dr. Wendsler Nosie, Sr., has a preeminent right of standing to enforce his direct ancestor's agreement with the defendant United States. The Defendants' assertions regarding standing based on participation in any "administrative processes" are

---

[1] See, *e.g.*, 25 U.S.C. §194. Trial of right of property; burden of proof.

REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR A PRELIMINARY INJUNCTION

4

inappropriate and misguided. This case is not before this Court pursuant to the judicial review provisions of the Administrative Procedures Act (5 U.S.C. 701, et seq.).

"While the Court has ruled that the United States' liability for breach of trust may be limited by Congress, it has also concluded that certain obligations are so fundamental to the role of a trustee that the United States must be held accountable for failing to conduct itself in a manner that meets the standard of a common law trustee. "This is so because elementary trust law, after all, confirms the commonsense assumption that a fiduciary actually administering trust property may not allow it to fall into ruin on his watch. 'One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets.'" Secretary of the Interior Order No. 3335, "Reaffirmation of the Federal Trust Responsibility to Federally Recognized Indian Tribes and Individual Indian Beneficiaries," August 20, 2014, at p.2 of 6 (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003)(internal citations omitted)).[2]

---

[2] "Sec. 2 **Authority.** This Order is issued pursuant to the U.S. Constitution, treaties, statutes, Executive Orders, and other Federal laws that form the foundation of the Federal-tribal trust relationship and in recognition of the United States' trust responsibility to all federally recognized Indian tribes and individual Indian beneficiaries.

Sec. 3 **Background.** The trust responsibility is a well-established legal principle that has its origins with the formation of the United States Government. In the modem era, Presidents, Congress, and past Secretaries of the Interior have recognized the trust responsibility repeatedly, and have strongly emphasized the importance of honoring the United States' trust responsibility to federally recognized tribes and individual Indian beneficiaries." Ibid at p.1.

See also, id. at p.2: "Presidential Commitments to the Trust Responsibility. Since this country's founding, numerous Presidents have expressed their commitment to upholding the trust responsibility. In the historic Special Message on Indian Affairs that marked the

**The Supreme Court's Decision in *Hobby Lobby* Causes Defendants' Substantial Burden Reliance to be Too Narrow, Which Raises Serious Questions for Plaintiff's RFRA Claim.**

Defendants' challenge Plaintiff's Religious Freedom Restoration Act of 1993, as amended,[3] 42 U.S.C. § 2000bb, et seq. ("RFRA"), claim in three ways. RFRA claims proceed in two parts, with a shifting of the burdens.[4]  The test is:

(1) What is the "exercise of religion" in which the tribal members engage with respect to the [proposed impacted area]...? (2) What "burden," if any, would be imposed on that exercise of religion if the proposed [action] ... went forward? (3) If there is a burden, would the burden be "substantial"? (4) If there would be a substantial burden, can the "application of the burden" to the tribal members be justified as "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest"?

---

dawn of the self-determination age, President Nixon stated "[t]he special relationship between Indians and the Federal government is the result of solemn obligations which have been entered into by the United States Government ... [T]he special relationship ... continues to carry immense moral and legal force. To terminate this relationship would be no more appropriate than to terminate the citizenship rights of any other American." Public Papers of the President: Richard M. Nixon, Special Message on Indian Affairs (July 8, 1970)(emphasis added).

And see, id. at p.3: Recently, Congress passed a joint resolution recognizing the "special legal and political relationship Indian tribes have with the United States and the solemn covenant with the land we share" and acknowledged the "long history of depredations and ill-conceived polices by the Federal government regarding Indian tribes" and offered "an apology to all Native peoples on behalf of the United States." lllth Cong. 1st Sess., S.J. Res 14 (Apr. 30, 2009)(emphasis added). Accessed January 23, 2021 online at https://www.doi.gov/sites/doi.gov/files/migrated/news/pressreleases/upload/Signed-SO-3335.pdf

[3] See, Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 803, Pub.L. 106-274.

[4] Section 3, 42 U.S.C. § 2000bb-1(a), begins with its general clause of: "Government shall not substantially burden a person's exercise of the religion even if the burden results from a rule of general applicability, except as provided in (b)." Subsection (b) states that the Government may substantially burden the person's interest "only if it demonstrates that the application of the burden...is...in furtherance of a compelling government interest."  Id. at (1).

*Navaho Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033-34 (9th Cir. 2007) (*rev.on other grds.*, *en banc*, *cert. denied*, 556 U.S. 1281 (2009).

**Hobby Lobby Decoupled RFRA From First Amendment Pre-*Smith* Precedents, Expands Burdens, and Overturned *Navaho Nation*'s Narrow Construction of RFRA's Substantial Burden Test.**

Two Supreme Court cases, unaddressed by Defendant, overrule the narrow holding on substantial burden in *Navaho Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008)(*en banc*), *cert. denied*, 556 U.S. 1281 (2009). Those cases are *Burwell v. Hobby Lobby, Inc.*, 573 U.S. 682 (2014) and *City of Boerne v. Flores*, 521 U.S. 507 (1997). Together they refute Defendants' two arguments that Plaintiff cannot succeed on the merits because it cannot show a substantial religious burden, because it has not been denied a government benefit, or it has not been coerced to change its [members] religious beliefs.  Doc. 18 at 19-20.

*Hobby Lobby* concerned closely held corporations whose owners had religious objections to certain forms of contraception services that were allowed to be covered by their employees' health care plans. While certain religious and non-profit employers were allowed to be exempt from needing to cover those services in their plans, the closely held corporation were not allowed to join that group of organizations (certified parties). In finding a new class of religious practitioners under RFRA for these businesses, the Supreme Court discussed how RFRA interpretations could not be bound by pre-*Smith*[5] cases.

---

[5] *Employment Div. Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990).

The Court held:

> [No one] can explain why Congress did that [deleted prior reference to the First Amendment tie in RFRA's amendments] if it wanted to tie RFRA coverage tightly to the specific holdings of our pre-*Smith* free-exercise cases. Moreover, as discussed, the amendment went further, providing that the exercise of religion "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc–3(g). It is simply not possible to read these provisions as restricting the concept of the "exercise of religion" to those practices specifically addressed in our pre-Smith decisions.
> ****
> [T]he results would be absurd if RFRA merely restored this Court's pre-*Smith* decisions in ossified form and did not allow a plaintiff to raise a RFRA claim unless that plaintiff fell within a category of plaintiffs one of whom had brought a free-exercise claim that this Court entertained in the years before *Smith*. For example, we are not aware of any pre-*Smith* case in which this Court entertained a free-exercise claim brought by a resident noncitizen. Are such persons also beyond RFRA's protective reach simply because the Court never addressed their rights before Smith?

*Id*. at 714-716.

While the Court was dealing with the extent of creating a new harmed RFRA plaintiff class, there is no reason to believe that it would not extend its RFRA interpretation's decoupling with earlier First Amendment cases holdings regarding the substantial burden test. Defendants' argued narrow interpretation of burden is in err because of *Boerne's* interpretations of religious burdens. A thorough analysis indicates that the Court did not consider the *Sherbert's* and *Yoder's* religious burdens to be the *only* type of constraints that could be a substantial burden on a plaintiff's religious beliefs and practices." The Court cited the purpose's section of the statute, that clearly indicates two different tests are involved. There is the compelling interest test which is distinct from the substantial burden evaluation.

In *Boerne*, the Court noted the distinction between the two. "Requiring a State to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law." *Id.* 521 U.S. at 534. Obviously, the "burden," test goes to the infringing activity itself, while the constitutional law test goes to the justification for the activity. These two are completely different evidentiary proofs, even to the point that each having a different party carry the burden of them.[6] RFRA's plain text indicates separate tests for "compelling interest" and for "substantial burden."[7] The two terms are also distinguished as separate terms in the provisions of RFRA. *See* 42 U.S.C.§2000bb-1. Under the lesser substantial burden test from *Hobby Lobby*, whatever that may be, the Court is no longer bound by the constraints on that test formerly imposed by *Navaho Nation*. Furthermore, the seasonal use of reclaimed water for snowmaking at a mountain resort is not equivalent to massive land alterations that drop a holy site one thousand feet down below the surface of the earth, collapsing the holy site into the bottom of a two-mile wide giant crater.

In *International Church of Foursquare Gospel v. City of San Leandro*, 873 F.3d 1059, 1066-1070 (9th Cir. 2011)(decided under RLUIPA), the Court recognized that the

---

[6] After *Hobby Lobby*, a possible substantial burden test could be found in *Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002)("A statute burdens the free exercise of religion if it 'put[s] substantial pressure on an adherent to modify his behavior and to violate is beliefs,' *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718…(1981)." See also, *Guru Nanak Sikh Soc. v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)(interpreting RLUIPA).

[7] Section 3, 42 U.S.C. § 2000bb-1(a), begins with its general clause of, "Government shall not substantially burden a person's exercise of the religion even if the burden results from a rule of general applicability, except as provided in (b)." Subsection (b) states that the Government may substantially burden the person's interest "only if it demonstrates that the application of the burden ... is ... in furtherance of a compelling government interest." *Id.* at (1).

REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR A PRELIMINARY INJUNCTION

right of "a place of worship ... consistent ... with theological requirements" is "at the very core of the free exercise of religion." This possible interpretation, along with the lessened test in *Hobby Lobby*, raises a serious question and a likelihood of Plaintiff prevailing on the RFRA claim sufficient to grant the injunction.

### Defendants' Reliance on *Lyng* and Congressional Floor Statements for Interpreting the Later Amended & Expanded RFRA is Wrong with Regard to Federal Lands and Sacred Land Decisions and Raises a Serious Question and a Likelihood of Plaintiff Prevailing on the Merits.

Justice Brennan, dissenting in *Lyng v. Northwest Indian Cemetery Protective Ass'n*., 485 U.S. 439, 460-461 (1989) stated:

> In marked contrast to traditional Western religions, the belief systems of Native Americans do not rely on doctrines, creeds, or dogmas. Established or universal truths—the mainstay of Western religions—play no part in Indian faith. Ceremonies are communal efforts undertaken for specific purposes in accordance with instructions handed down from generation to generation. Commentaries on or interpretations of the rituals themselves are deemed absolute violations of the ceremonies, whose value lies not in their ability to explain the natural world or to enlighten individual believers but in their efficacy as protectors and enhancers of tribal existence. *Ibid.* Where dogma lies at the heart of Western religions, Native American faith is inextricably bound to the use of land. The site-specific nature of Indian religious practice derives from the Native American perception that land is itself a sacred, living being. See Suagee, American Indian Religious Freedom and Cultural Resources Management: Protecting Mother Earth's Caretakers, 10 Am.Ind.L.Rev. 1, 10 (1982).

### 1. *Lyng* is Inapplicable to Expanded RFRA Rights as to Federal Lands

Defendants contend that "*Lyng* and the Ninth Circuit precedent following hold that government activity on its own land cannot constitute a substantial burden under RFRA." However, in *Navaho Nation* the Defendants' attorney stated when questioned at oral argument about the challenged activity on Forest Service land stated:

> Q.- So, the use of government land has the potential under RFRA to impose a substantial burden?
> Ans.- It is possible that certain activities on certain government land can still substantially burden religious activities.
> Q.- And would it then violate RFRA if there were no compelling state interest?
> Ans.- Correct. Yes.

*Id*. at 1096 (J. Fletcher, with J. Pregerson and J. Fisher dissenting, *en banc*).

In the intervening twenty years, and with the passage of RFRA, the Defendants' position has changed, and *Lyng* is distinguishable on that point. Other cases also have found actions affecting government lands can be actionable under RFRA. *See, United States v. Hoffman*, 436 F.Supp.3d 1272, 1286 (D. Az. 2020)(failing to follow U.S. argument that RFRA does not apply on federal lands).

**2. Defendants' Use of Congressional Floor Statements Is Improper.**

Defendants attempt to use floor statements from two Senators to argue that RFRA will not apply to "management of governments resources" (Sen. Hatch), Doc. 18 at 23, and "RFRA will not address the circumstances in which Government action on public and Indian lands…infringes upon the free exercise of a native American religion" (Sen. Inouye). *Id*. However, both of those potential restrictions were not included in RFRA. Committee Reports, much less floor language, that cannot be tied to a specific statutory provision cannot be credited nor relied on. *See Shannon v. U.S.*, 512 U.S. 573, 583 (1994)("We are not aware of any case, however...[and none offered] in which we have given authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute."). Therefore, as to a substantial burden, the last test Plaintiff must meet under RFRA, as in each of the issues presented in the motion for an

injunction, Plaintiff raises a serious question, will suffer irreparable injuries with the balance of hardships tipping sharply in Plaintiff's favor, the Plaintiff is likely to prevail on the merits, and an injunction here and now is in the public interest in protecting treaty rights, aboriginal title rights, federal trust responsibilities, statutory rights under RFRA, and constitutional rights, especially including the free exercise of religion.

Dated: January 24, 2021     Respectfully submitted,

  /s/ Michael V. Nixon
Michael V. Nixon, *pro hac vice*
(OR Bar # 893240)
101 SW Madison Street #9325
Portland OR 97207
Telephone: 503.522.4257
Email: michaelvnixon@yahoo.com

_____
Clifford Levenson (AZ Bar # 014523)
5119 North 19th Avenue, Suite K
Phoenix, AZ 85015
Telephone: 602.258.8989
Fax: 602.544.1900
Email: cliff449@hotmail.com