Christopher D. Thomas (#010482)
Diane M. Johnsen (#007634)
Shane R. Swindle (#011738)
Andrea J. Driggs (#023633)
Janet M. Howe (#034615)
Samantha J. Burke (#036064)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:   602.351.8000
Facsimile:   602.648.7000
cthomas@perkinscoie.com
djohnsen@perkinscoie.com
sswindle@perkinscoie.com
adriggs@perkinscoie.com
jhowe@perkinscoie.com
sburke@perkinscoie.com
docketPHX@perkinscoie.com

*Attorneys for Defendant-Intervenor
Resolution Copper Mining, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Apache Stronghold, | No. CV-21-0050-PHX-SPL |
| Plaintiff, | |
| v. | **PARTIALLY OPPOSED MOTION FOR LIMITED LIFT OF STAY AND TO INTERVENE BY RESOLUTION COPPER MINING, LLC** |
| United States of America, *et al.*, | |
| Defendants. | |
| Resolution Copper Mining, LLC, | |
| Defendant-Intervenor. | |

**Introduction**

This action asks the Court to enjoin the United States from conveying title to certain federal lands, as directed by Congress over eight years ago in the Southeast Arizona Land Exchange Act, Section 3003 of Public Law 113-291 (Dec. 19, 2014) (the "Act"). A stay was put in place following this Court's denial of Plaintiff's request to preliminarily enjoin that conveyance.

Resolution Copper Mining, LLC ("Resolution"), the statutorily authorized recipient of the title whose conveyance is being challenged, requests the Court lift the stay for the limited purpose of permitting Resolution to seek leave to intervene as a defendant. The Ninth Circuit recently heard argument en banc on the denial of Plaintiff's request for preliminary injunctive relief. Because the timing of remand is unpredictable, Resolution files this Motion now to ensure it can participate in this matter immediately following remand, or in case Plaintiff seeks another expedited request for injunctive relief. The hearing on Plaintiff's original preliminary injunction request was held on February 3, 2021, a mere 22 days after the filing of its Complaint. A similar schedule following remand might leave insufficient time for consideration of Resolution's right to intervene.

Resolution is entitled to intervene as of right under Federal Rule of Civil Procedure Rule 24(a)(2). The Act explicitly states its purpose "is to authorize, direct, facilitate, and expedite the exchange of land between Resolution Copper and the United States." 16 U.S.C. § 539p(a). *Congress itself* thus created one of the several protectable interests held by Resolution being challenged in this suit. And Plaintiff's requested relief, if granted, would unquestionably impair those rights—Plaintiff seeks to permanently prevent the land exchange from occurring and Resolution from mining its unpatented claims located on its own land. This is a clear case for granting intervention of right.

Alternatively, Resolution's defenses to Plaintiff's claims raise questions of fact or law in common with the main action against the Forest Service, entitling Resolution to intervene permissively under Rule 24(b).

This Motion is supported by the Declaration of Victoria Peacey ("Peacey Decl."), President and General Manager of Resolution. *See* Exhibit A. Resolution has also lodged its proposed Answer as Exhibit B, as required by Rule 24(c). Defendant United States reports that it consents to Resolution's permissive intervention and takes no position on intervention as of right. Plaintiff Apache Stronghold is opposed.

**Background**

In December 2014, after years of delay, Congress in the Act directed the Secretary of Agriculture to convey to Resolution title to certain copper-bearing National Forest Service lands in exchange for conservation lands owned by Resolution, cash as necessary, and an annual royalty payment based on copper extracted by Resolution. 16 U.S.C. § 539p. In this particular instance, Congress tied the deadline for transferring title of the subject federal land to the date of publication of a Final Environmental Impact Statement ("EIS") that assessed the environmental impact of the land exchange. In so doing, Congress unambiguously imposed on the Secretary a non-discretionary duty to convey to Resolution title to the land "[n]ot later than 60 days after the date of publication of the final [EIS]" *Id*. § 539p(c)(10).

Anticipating the publication of the final EIS, Plaintiff initiated this lawsuit on January 12, 2021, and immediately moved for a preliminary injunction to enjoin the land exchange. [Dkt. 7][1] The final EIS was then published on January 15, 2021. The Court held an evidentiary hearing on Plaintiff's preliminary injunction motion and subsequently issued an order denying the motion. [Dkt. 13] The Ninth Circuit affirmed that denial, but the panel's opinion was vacated for a rehearing en banc. *See Apache Stronghold v. United States*, 38 F.4th 742, 773 (9th Cir.), *reh'g en banc granted, op. vacated*, 56 F.4th 636 (9th Cir. 2022). That hearing took place on March 21, 2023, and it is unknown when the court

---

[1] Along with its motion for a preliminary injunction, Plaintiff moved for a temporary restraining order (Dkt. 7). The Court denied the TRO that same day, reasoning that the land exchange could take place "weeks after the TRO would expire and be converted to a preliminary injunction." [Dkt. 13 at 4]

will issue its en banc opinion. Meanwhile, the case has been stayed by this Court pending the Ninth Circuit's disposition of Plaintiff's appeal. [*See* Dkt. 81]

In the midst of this, the Forest Service rescinded the EIS in March 2021, explaining that it needed "additional time" to "understand concerns raised by Tribes and the public." *Apache Stronghold*, 38 F.4th at 751. But as Defendants recently stated in a related case, the Forest Service estimates that the environmental analysis "will be completed and [the EIS] re-published in late Spring or early summer 2023," and that Defendants "will provide 60 days' notice" before the EIS is re-published. Joint Status Report, *San Carlos Apache Tribe v. U.S. Forest Serv.*, No. 2:21-cv-00068-DWL (D. Ariz. April 17, 2021), Dkt. No. 58. That 60-day notice could therefore issue imminently, prompting Resolution to seek intervention now. Accordingly, altogether, it could take 120 days from the Forest Service's announcement of its intent to re-publish the EIS until title is conveyed to Resolution under the Act.

As this Court knows (*see* Dkt. 79), Plaintiff's case is not the only challenge to the congressionally-directed conveyance to Resolution. In the other cases, one brought by San Carlos Apache Tribe and one brought by Arizona Mining Reform Coalition, Resolution was granted leave to intervene because of its significant, protectable interests at stake in the litigation. *See* Order, *San Carlos Apache Tribe v. U.S. Forest Serv.*, No. 2:21-cv-00068-DWL (D. Ariz. Feb. 2, 2021), Dkt. No. 21; Order, *Ariz. Mining Reform Coal. v. U.S. Forest Serv.*, No. 2:21-cv-00122-DLR (D. Ariz. Feb. 24, 2021), Dkt. No. 22. Those same significant, protectable interests are at stake here.

### Argument

Congress has directed a federal agency to complete a non-discretionary land exchange in which Resolution would receive right and title to certain federal lands in exchange for conservation lands owned by Resolution and other payment. Plaintiff, through this lawsuit, is trying to stop that exchange. There can be no serious debate that Resolution is entitled to intervene.

**A.    Resolution is entitled to intervene as of right.**

Intervention as of right is governed by Rule 24(a), which provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

In the Ninth Circuit, intervention as of right involves a four-part test: "(1) the motion must be timely; (2) the applicant must [have] a 'significantly protectable interest' [relating to the property or transaction subject of] the action; (3) the disposition of the action must as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest may be inadequately represented by the other parties." *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018) (citation omitted).

This test is "construed broadly in favor of proposed intervenors." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). Courts are to apply a "liberal policy in favor of intervention," which "serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (citation omitted). Indeed, the Rule 24(a)(2) test is designed to "involve[e] as many apparently concerned persons as is compatible with efficiency and due process." *Id*. (citation omitted).

In evaluating motions to intervene, courts are to accept as true well-pleaded, non-conclusory allegations and evidence submitted in support of the motion. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001). This Court should therefore accept as true the allegations and evidence submitted by Resolution in support of this Motion, including those set forth in the declarations and in statute.

As described below, Resolution easily satisfies each part of the Rule 24(a)(2) test.

**1.    Resolution's Motion to Intervene is timely.**

Timeliness is evaluated using a totality of the circumstances test that focuses on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the

1    prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A.*
2    *Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). The Ninth Circuit
3    "do[es] not require hasty intervention." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 823
4    (9th Cir. 2021). Indeed, the purpose of the timeliness requirement is not to "punish [a] tardy
5    would-be intervenor" but to prevent the intervenor "from derailing a lawsuit *within sight of*
6    *the terminal.*" *Id.* (emphasis added) (citations omitted).

7          Here, Resolution's Motion is timely. As to the "stage of the proceeding," this case,
8    although filed over two years ago, is still very much in its preliminary stages: no answer
9    has been filed and no discovery has occurred. Plaintiff moved for a preliminary injunction
10   immediately after filing suit. The briefing, evidentiary hearing, and Court's order on that
11   motion wrapped up within just over four weeks of the Complaint being filed. [*See, e.g.*,
12   Dkts. 1, 7, 18, 26, 27, 57] Plaintiff immediately appealed the denial of preliminary
13   injunction (Dkt. 57), and the Court stayed the case shortly after, (Dkt. 81). Resolution now
14   properly seeks to intervene in anticipation of remand of the case to this Court. *See United*
15   *States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984*)* (a "[m]ere lapse of time alone is not
16   determinative;" the relevant inquiry is whether there has been a "change in circumstance[s]"
17   that "suggests that the litigation is entering a new stage").

18         That same procedural history shows that Resolution has not delayed in moving to
19   intervene. Courts in this circuit routinely allow intervention in cases where far more action
20   and time has elapsed. *See, e.g.*, *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733, 2019 WL
21   9443778, at *5 (N.D. Cal. Nov. 19, 2019) (finding intervention timely in eight-year-old case
22   that was stayed for five years, when intervenor, without explanation, waited another six
23   months after stay was lifted to move to intervene).

24         Finally, the parties cannot have been prejudiced by any delay because, as just
25   discussed, Resolution has not delayed in seeking to intervene. *See Smith*, 830 F.3d at 859
26   (the prejudice factor refers to "prejudice attributable to [the proposed intervenor's] delay").
27   Beyond that, no prejudice would result from Resolution's intervention. Prejudice in this
28   context concerns whether the parties' "'problems are materially different now than they

-5-

would have been had'" intervention been sought earlier, but "the fact that including another party in the case might make resolution more 'difficult'" does not constitute prejudice. *Id.* at 857 (quoting *Oregon*, 745 F.2d at 552-53); *see Kalbers*, 22 F.4th at 825 (noting that "every motion to intervene will complicate or delay a case to some degree" because "three parties are more than two," but "[t]hat is not a sufficient reason to deny intervention"). Accordingly, courts will find prejudice if late intervention will "upset a delicate balance achieved after years of litigation," as in the case of advanced settlement discussions or a consent decree. *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (collecting cases). Here, again, the Defendants have not even filed an answer and no discovery has occurred. No party will suffer prejudice by Resolution intervening.

### 2.    Resolution has significant, protectable interests.

To intervene as a matter of right, an applicant must establish "a 'protectable interest' in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action." *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981) (citation omitted). Rule 24(a)(2) does not require a specific type of legal or equitable interest to support intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). Rather, to "prevent or simplify future litigation," courts construe Rule 24 "broadly" to allow "parties with a *practical* interest in the outcome of a particular case to intervene." *Id.* at 397-98 (citations omitted). The Ninth Circuit has held, for example, that "[a]n applicant demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (citation omitted).

To establish this second element of the Rule 24(a)(2) intervention test, "[i]t is generally enough that the interest . . . is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citation omitted). Each is easily established here.

First, there can be no reasonable dispute that Resolution has interests protectable under law. In fact, multiple, distinct property interests are implicated by this case. Resolution's real property rights are at stake—property rights that were *created by federal statute*. Through the Act, Congress *directed* that Resolution receive title to an area of federal land—on which Resolution plans to develop the Resolution Copper Project (the "Project")—in exchange for title to conservation lands owned by Resolution and other payment. *See* Peacey Decl., ¶¶ 11-14. Plaintiff's lawsuit seeks to deprive Resolution of that statutorily-conferred property, establishing clear grounds for intervention. *E.g.*, *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1483 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (allowing intervention when lawsuit "would affect the use of real property owned by the intervenor," and noting such real property interests "are squarely in the class of interests traditionally protected by law").

Beyond title to the land itself, Resolution has property interests at stake in the form of unpatented mining claims established before the Act was passed and pursuant to and protected by the Mining Law of 1872. That law allows claimants to gain rights to valuable mineral deposits on federal land by "locating"—or marking—a mining claim and following various procedures. *Grand Canyon Tr. v. Provencio*, 26 F.4th 815, 821-22 (9th Cir. 2022); *see* 30 U.S.C. § 22. Locating a mining claim "gives the claimant a vested possessory right to the real property at issue." *Provencio*, 26 F.4th at 822; *see also United States v. Shumway*, 199 F.3d 1093, 1100 (9th Cir. 1999) ("[A] mining 'claim' is not . . . a mere assertion of a right—but rather is a property interest[.]"). Here, because Resolution maintains unpatented mining claims in the land subject to the exchange (*see* Peacey Decl., ¶¶ 9, 17), it has an additional protectable interest at stake in this litigation. *See Sierra Club*, 995 F.2d at 1482 (ownership of permits were "rights connected with the [intervenor's] ownership of real property" and "[s]uch rights are among those traditionally protected by law").

Although the above is more than sufficient, "[e]ven an economic interest will support intervention of right if it is concrete." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Ampam Riggs Plumbing Inc.*, No. CV-14-00039-PHX, 2014 WL 1875160, at *4 (D. Ariz. May 9,

2014) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)). Here, Resolution has invested over $2.3 billion dollars in the Project on data collection, infrastructure, reclamation, purchase of conservation lands, and maintaining its unpatented mining claims. Peacey Decl., ¶¶ 15-17. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 837-38 (9th Cir. 2022) (reversing denial of intervention by holder of oil and gas leases that had invested $5.2 million, acknowledging the "significant financial and property interests at stake" for the lessee); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995-96 (10th Cir. 2009) (environmental group challenged Forest Service's approval of a plan to vent methane gas from mining operation; the "threat of economic injury from the outcome of [the] litigation undoubtedly gives a petitioner the requisite interest") (citation omitted).

Second, there is an obvious and direct relationship between Resolution's legally protected interests and the claims at issue in this litigation. Expressly invoking Resolution numerous times throughout the Complaint, Plaintiff seeks to enjoin the land exchange and to prevent Resolution from exercising its legal right to develop its private property and mining claims. *See, e.g.*, Dkt. 1 ¶¶ 21, 40-41 & Request for Relief (at 37-38). Resolution's interests are directly impacted by this lawsuit, supporting intervention of right.

### 3. Resolution's interests will be impaired by the relief sought.

The third element in the four-part test, impairment, "follows from the factors" related to Resolution's protectable interest. *See Sierra Club*, 995 F.2d at 1486; *Nat'l Union Fire*, 2014 WL 1875160, at *5 ("Generally, after finding that a proposed intervenor has a significant protectable interest, courts have little difficulty concluding that the disposition of the case may affect it.") (citing *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). The burden for establishing impairment is minimal: "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]" Fed. R. Civ. P. 24 advisory committee's notes to 1966 amendment.

-8-

In particular, the Ninth Circuit has held that when a plaintiff seeks injunctive relief that will have direct, immediate, and harmful effects upon a third party's legally protectable interests, and the third party has "no legal means to challenge that injunction while it remains in effect," its interests are practically impaired and intervention should be granted. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

That is precisely the case here. Plaintiff's claims and the relief sought, if granted, would temporarily and/or permanently deprive Resolution of its real property and prevent it from realizing any benefit from its other property rights—and Resolution would have no recourse outside of this case. This is an obvious impairment of Resolution's rights. *See id.*

### 4.   The existing parties may not adequately represent Resolution's interests.

Finally, Resolution's interests may not be adequately protected by the existing parties. The Supreme Court has determined that an applicant's burden of showing that representation "may be" inadequate is "minimal." *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted); *WildEarth Guardians*, 573 F.3d at 996 (intervenor's "showing is easily made" when "the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest") (citation omitted); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) ("We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests.").

In determining whether Resolution's interests will be adequately represented, this Court can consider (1) whether the interest of the Forest Service is such that it will undoubtedly make all of Resolution's arguments; (2) whether the Forest Service is capable and willing to make such arguments; and (3) whether Resolution would offer any necessary

elements to the proceedings that other parties would neglect. *See California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

Here, the Forest Service is a federal agency and therefore obligated to consider a range of views and policies which may be inconsistent with the interests of Resolution, a private party seeking to protect its private interests. The Forest Service cannot be expected to make the same arguments that Resolution would make to protect those private interests, nor would the Forest Service necessarily be willing to do so. And Resolution, by virtue of its role and investment in the Project, will also focus on issues that the current parties may otherwise neglect. Indeed, the need for Resolution's perspective and knowledge in this case was recently made plain during argument at the Ninth Circuit, when the en banc panel asked about the extent of subsidence that the Project may cause and when that might occur, if at all. It is Resolution that can speak to those questions with particularity and data, not necessarily the Forest Service.

Encountering similar scenarios time and again, the Ninth Circuit has explicitly acknowledged that "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499 (citation omitted); *see also Allied Concrete*, 904 F.3d at 1068 (intervenor's "interests are potentially more narrow than the public's at large, and the [government's] representation of those interests 'may [be] inadequate'") (citation omitted); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823-24 ("The interests of government and the private sector may diverge. On some issues Applicants will have to express their own unique private perspectives and in essence carry forward their own interests . . . ."). So, too, here—Resolution's private interests likely diverge from the Defendants' governmental interests, and therefore Resolution must be afforded its own opportunity to protect those interests.

**B.    Alternatively, Resolution should be granted permissive intervention.**

The Court can also grant Resolution permissive intervention under Rule 24(b). That Rule provides that on timely application "the court may permit anyone to intervene who . . .

1    has a claim or defense that shares with the main action a common question of law or fact."

2    Fed. R. Civ. P. 24(b)(l)(B).[2]

3        Generally, an applicant seeking permissive intervention must meet three

4    requirements: (1) there must be an independent ground for jurisdiction; (2) the motion must

5    be timely; and (3) the applicant's claims or defenses must share a common question of law

6    or fact with the main action. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836,

7    843 (9th Cir. 2011). But where, as here, a case invokes federal question jurisdiction, all that

8    is necessary is a timely motion and a claim or defense with a question of law or fact in

9    common with the main action. *Id.* at 844.

10        As described earlier in this Motion, Resolution's Motion is timely. Moreover,

11    Resolution's defenses will plainly involve many questions of law and fact in common with

12    the main action. Resolution, the statutory beneficiary of a land exchange legislated by

13    Congress that Plaintiff is attempting to stop under various legal theories, will be defending

14    its interests conferred by the Act and various other interests and will demonstrate the legal

15    failings of Plaintiff's claims. This is more than sufficient under Rule 24(b). *E.g.*, *Kootenai*

16    *Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other*

17    *grounds by Wilderness Soc'y*, 630 F.3d 1173 (affirming permissive joinder of outside

18    groups seeking to intervene to defend the Forest Service's Roadless Rule, which the

19    plaintiff sought to enjoin as improper); *Silver v. Babbitt*, 166 F.R.D. 418, 433 (D. Ariz.

20    1994), *aff'd*, 68 F.3d 481 (9th Cir. 1995) ("The determination of whether a 'common

21    question' exists [under Rule 24(b)] is liberally construed.") (citation omitted).

22                                    **Conclusion**

23        For the foregoing reasons, Resolution respectfully requests this Court lift the stay for

24    the limited purpose of allowing Resolution leave to intervene under Rule 24(a) or (b).

25

26    _____

27    [2] Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As discussed above, Resolution has not delayed in seeking to intervene and no party would be prejudiced by its

28    intervention.

1   Respectfully submitted this 21st day of April, 2023.

2                                        **PERKINS COIE LLP**

3

4                                        By: /s/ Samantha J. Burke
                                            Christopher D. Thomas
5                                           Diane M. Johnsen
                                            Shane R. Swindle
6                                           Andrea J. Driggs
                                            Janet M. Howe
7                                           Samantha J. Burke
                                            2901 North Central Avenue, Suite 2000
8                                           Phoenix, Arizona 85012-2788

9                                        *Attorneys for Defendant-Intervenor*
                                         *Resolution Copper Mining, LLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on April 21, 2023, I electronically transmitted the

3  attached documents to the Clerk's Office using the CM/ECF System for filing and

4  transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5

6      I hereby certify that on April 21, 2023, I served the attached document by first

7  class mail on Judge Logan, United States District Court of Arizona, 401 West Washington

8  Street, SPC 82, Phoenix, AZ 85003-2161.

9

                              /s/ Shawne Murphy

10  161315562.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28