# Exhibit A

## DECLARATION OF VICTORIA PEACEY

I, Victoria Peacey, declare as follows:

1.      I am over the age of 18 and am competent to make this declaration.  If called as a witness, I could and would testify to the following facts, which are within my personal knowledge and based on my review of relevant documents.

2.      I joined Resolution Copper Mining LLC ("Resolution") in September 2010. Since March 14, 2023, I have been the President and General Manager, responsible for overseeing all aspects of planning, development, and operations of the project. I have been serving in this role as acting director since August 2022.

3.      Previously, I was the Chief of Staff to the Chief Operating Officer for Rio Tinto Copper from July 2021 to July 2022, where I was accountable for implementing the strategic direction for copper, including operations, projects, and growth across the globe. Before that I worked as the Senior Business Partner - Community and Social Performance ("CSP"), Copper – America and Joint Ventures from February 2021 to July 2021.  In that role, I lead the CSP teams at various Rio Tinto operations, including at Resolution, while also continuing to lead the federal permitting activities at Resolution.

4.      From 2012-2021, I worked as the acting Vice President of External Affairs (July 2012-December 2012), the Senior Manager of Environment and Communities (January 2013-December 2015) and Senior Manager of Permitting and Approvals (January 2016-January 2021), in which I managed permitting processes at the federal, state, and local levels for Resolution.

5.      Before joining Resolution, I spent approximately ten years managing environmental affairs and permitting at several Rio Tinto facilities, including America's only primary nickel mine and one of the world's largest open-pit copper mines.

6.     I hold two degrees from the University of Western Ontario:  a Bachelor of Science degree in applied geosciences and a Master of Science degree in civil and environmental engineering.

**Resolution Copper:  Overview of the Project**

7.     Resolution is a limited liability company owned by subsidiaries of the Rio Tinto Group and BHP Group, Ltd.

8.     Resolution is currently developing one of the world's largest untapped copper deposits. I will refer to this work as the "Project."

9.     In 2004, Resolution acquired property and equipment associated with the historic Magma Copper Mine near Superior, Arizona, in an area that forms part of the Copper Triangle, in the Pioneer Mining district.  Mining in the Superior area reportedly began in the late 1880s.  Resolution holds approximately 185 unpatented mining claims near Superior, Arizona within the area commonly known as "Oak Flat" or "Oak Flats", in Pinal County, Arizona (the "Claims").  The Claims are located on lands, the surface of which are administered by the Tonto National Forest.  The Claims were located by Resolution or a predecessor in interest between 1903 and 2011.

10.    Resolution's Project work began in 2005, when it started reclamation work at the former Magma West Plant.  That work lasted about 15 years and cost approximately $75 million.   Resolution's reclamation efforts restored the West Plant area to state regulatory standards.

11.    In December 2014, Congress passed the Southeast Arizona Land Exchange and Conservation Act, 16 USC § 539p (the "Act"), as part of a lands package that was included in the National Defense Authorization Act.  The Act provides that the Federal land, as defined by the Act, shall be exchanged for non-Federal lands held by Resolution.

2

For purposes of the Act, Federal lands includes a portion of Oak Flat known as the "Oak Flat Withdrawal Area" and a portion of the Tonto National Forest lands where Resolution's Claims are located. A detailed map depicting the Claims relative to the boundaries of the Federal land is attached as Exhibit A.

12.     Resolution parcels to be conveyed to the Forest Service and Bureau of Land Management ("BLM") include high-priority conservation lands that will be added to National Forests in Arizona, as well as lands that will be added to the San Pedro Riparian and Las Cienegas national conservation areas, managed by the BLM.

13.     Pursuant to the Act, Resolution has agreed to pay all costs that are associated with the land exchange, including any required environmental analysis.

14.     The Act also provides for appraisals of the Federal land and non-Federal land.  The appraisal is to include a detailed income capitalization approach analysis of the market value of the Federal land. Annually, Resolution will report the quantity of locatable minerals produced during the preceding calendar year in commercial quantities from the Federal land.  If the cumulative production of valuable locatable minerals produced in commercial quantities from the Federal land exceeds the quantity of locatable minerals from the Federal land used in the income capitalization approach in the initial appraisal, Resolution will pay the United States a value adjustment payment for the quantity of excess production at the same rate assumed for the income capitalization approach analysis. Those payments are to be used for maintenance, repair, and rehabilitation projects for Forest Service and Bureau of Land Management assets.

**Resolution's Economic Impact**

15.     To date Resolution has invested approximately $2.3 billion in the Project.

16.     Resolution's investments include purchases of conservation lands to be deeded to the United States, infrastructure development, reclamation activities, data collection, and investment in the environment, local communities, and Native American Tribes. To date, Resolution has invested about $10.9 million in more than 970 local initiatives, which span education, the environment, community development, and arts and culture.

17.     Resolution has also made investments required to maintain its unpatented mining claims.

18.     The Project's headcount varies by level of activity at the site. Currently, there are 181 full-time employees at Resolution. Of those, 160 live within a 40-mile radius of Superior, with the remaining 21 full-time employees residing in Arizona but outside the 40-mile radius.

19.     In 2022, the number of contractors at site ranged from 160-210 and averaged 187 at site during the year. Such contract workers are typically .5 count of a full-time equivalent employee due to varied hours worked at site. Therefore, between the contractors and employees, there are approximately 275 FTE workers at Resolution.

20.     When the mine is fully operational, Resolution anticipates directly employing about 1,500 workers and paying around $134 million per year in total compensation.  The Project will also generate approximately 2,200 indirect jobs, meaning it could support some 3,700 jobs at full production.  The Project will result in the purchase of about $546 million per year in goods and services from local businesses.

21.     Studies show Resolution could produce up to $61 billion in economic value for Arizona over the 60-year life of the Project. Resolution will boost state and local tax

revenues from $88 million to $113 million per year, while the federal government could see an extra $200 million in tax revenues per year.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  This Declaration was executed on April 21, 2023.


_____
Victoria Peacey

161854694

# Exhibit A

DocuSign Envelope ID: CD56E9F7-EE99-4555-B62F-FCA26420E44E



## Legend

- Apache Leap Special Management Area
- Oak Flat Withdrawal Boundary
- Oak Flat LEX Boundary
- Resolution Holdings

### Resolution Claims
- Unpatented
- Patented

### Surface Management (BLM 2012)
- Private Land (No Color)
- State Trust Land
- US Forest Service (USFS)

**RESOLUTION**
C O P P E R

Resolution Copper Claims Within
the ALSMA and Oak Flat LEX Parcel

June 10, 2019
Prepared By: Mary Morissette

Exhibit A

# Exhibit B

1   Christopher D. Thomas (#010482)
    Diane M. Johnsen (#007634)
2   Shane R. Swindle (#011738)
    Andrea J. Driggs (#023633)
3   Janet M. Howe (#034615)
    Samantha J. Burke (#036064)
4   PERKINS COIE LLP
    2901 North Central Avenue, Suite 2000
5   Phoenix, Arizona 85012-2788
    Telephone:   602.351.8000
6   Facsimile:   602.648.7000
    cthomas@perkinscoie.com
7   djohnsen@perkinscoie.com
    sswindle@perkinscoie.com
8   adriggs@perkinscoie.com
    jhowe@perkinscoie.com
9   sburke@perkinscoie.com
    docketPHX@perkinscoie.com
10
    *Attorneys for Defendant-Intervenor*
11  *Resolution Copper Mining, LLC*

12

13                 UNITED STATES DISTRICT COURT

14                      DISTRICT OF ARIZONA

15

16  Apache Stronghold,                    No. CV-21-0050-PHX-SPL

17                      Plaintiff,

18          v.                            **[PROPOSED]
                                          DEFENDANT-INTERVENOR
19  United States of America, *et al.*,   RESOLUTION COPPER
                                          MINING, LLC'S ANSWER**
20                      Defendants.

21  Resolution Copper Mining, LLC,

22                      Defendant-Intervenor.

23

24

25

26

27

28

Resolution Copper Mining, LLC ("Resolution"), for its Answer to the Complaint (Dkt. 1) of Plaintiff Apache Stronghold, pleads as follows. Except as expressly admitted herein, Resolution denies each and every allegation contained in Plaintiff's Complaint and denies that Plaintiff is entitled to any relief requested in its Complaint or otherwise.

**THE NATURE OF THIS ACTION**

1.      Resolution denies the allegations contained in Paragraph 1 of the Complaint.

2.      In response to the allegations in Paragraph 2 of the Complaint, Resolution denies for want of personal knowledge the Apache's history and use of Oak Flat as a religious and cultural property and the Apache term and meaning of "Oak Flat." Resolution also notes that the term "Oak Flat," as is used in this case, related litigation, and elsewhere, often refers to different areas of land, including sometimes the entire parcel of federal land to be exchanged under the Southeast Arizona Land Exchange Act (the "Act") and sometimes just the Oak Flat campground. Resolution denies the remaining allegations contained in Paragraph 2.

3.      In response to the allegations in Paragraph 3 of the Complaint, Resolution admits that: (1) it intends to explore and potentially develop certain unpatented mining claims owned by Resolution that lie beneath the land to be conveyed by Resolution pursuant to an act of Congress, which includes Oak Flat and other lands, and (2) Resolution is an American limited liability company whose corporate parents are also American corporations ultimately owed by Rio Tinto PLC and BHP PLC. Resolution denies that Plaintiff has accurately characterized the Resolution Copper Project (the "Project"), denies that the land in the proposed exchange is not owned by the federal government, and otherwise denies the remaining allegations contained in Paragraph 3 of the Complaint.

4.      Resolution denies for want of personal knowledge the allegations in Paragraph 4 of the Complaint.

5.      In response to the allegations in Paragraph 5 of the Complaint, Resolution admits the Complaint alleges claims under the First Amendment, Fifth Amendment, the

Religious Freedom Restoration Act, and for breach of treaty rights and trust obligations. Resolution denies that Plaintiff has any claim under these laws and theories, and otherwise denies the remaining allegations contained in Paragraph 5 of the Complaint.

6.      In response to the allegations in Paragraph 6 of the Complaint, Resolution admits that: (1) Congress enacted the Act, which directs the Forest Service to convey to Resolution title to an area of federally owned land, and that Oak Flat is located in that land, and (2) the Forest Service released an Environmental Impact Statement ("EIS") regarding the Act, but that it subsequently withdrew that EIS to allow further consultation with tribes with cultural ties to the project area. Resolution denies the remaining allegations contained in Paragraph 6 of the Complaint.

7.      In response to the allegations in Paragraph 7 of the Complaint, Resolution admits that: (1) the Apache and the United States entered a treaty in 1852, (2) the Act, passed by Congress, directs the Forest Service to convey to Resolution title to an area of federally owned land, and that Oak Flat is located in that land, and (3) Resolution intends to explore and potentially develop certain unpatented mining claims owned by Resolution on that land. Resolution denies the allegation that the Western Apaches own the land that is to be conveyed to Resolution under the Act, and otherwise denies the remaining allegations contained in Paragraph 7 of the Complaint.

8.      In response to the allegations in Paragraph 8 of the Complaint, Resolution denies for want of personal knowledge that Oak Flat is the seat of Western Apache religious beliefs. Paragraph 8 of the Complaint otherwise consists of Plaintiff's legal theories and interpretations of federal law, to which no response is required. To the extent a response is required, Resolution denies that Plaintiff is entitled to any relief herein and denies the remaining allegations in Paragraph 8.

9.      Paragraph 9 of the Complaint repeats the allegations in Paragraph 2 of the Complaint. In response to the allegations in Paragraph 9, Resolution adopts and incorporates Paragraph 2 of this Answer.

10.     Paragraph 10 of the Complaint repeats the allegations in Paragraph 3 of the Complaint. In response to the allegations in Paragraph 10, Resolution adopts and incorporates Paragraph 3 of this Answer.

11.     In response to the allegations in Paragraph 11 of the Complaint, Resolution admits that, in compliance with the Act and the National Environment Policy Act ("NEPA"), the Forest Service and tribes with cultural ties to the project area have consulted regarding the land conveyance and Oak Flat. Resolution lacks knowledge regarding the extent of those communications. Resolution denies that Plaintiff is entitled to any relief herein and denies the remaining allegations in Paragraph 11 of the Complaint.

12.     Resolution denies that Plaintiff is entitled to any relief herein and denies the remaining allegations in Paragraph 12 of the Complaint.

13.     Resolution denies for want of personal knowledge the allegations in Paragraph 13 of the Complaint regarding Plaintiff and its members' religious beliefs, convictions, and practices. Resolution denies the remaining allegations in Paragraph 13 of the Complaint.

14.     Resolution denies for want of personal knowledge the allegations in Paragraph 14 of the Complaint regarding Plaintiff and its members' religious beliefs, convictions, and practices, or its comparison of them to those of Christianity. Resolution denies the remaining allegations in Paragraph 14 of the Complaint.

15.     Resolution denies the allegation in Paragraph 15 of the Complaint.

16.     In response to the allegations in Paragraph 16 of the Complaint, Resolution admits that the Apache and the United States entered the Treaty of Santa Fe in 1852, and that such treaty was ratified on March 25, 1853. Resolution denies for want of personal knowledge whether the treaty was ever amended, rescinded, or terminated. Resolution denies the remaining allegations in Paragraph 16 of the Complaint.[1]

---

[1] To the extent a response to Footnote 1 of the Complaint is required, Resolution responds that the authority referenced speaks for itself.

17.     In response to the allegations in Paragraph 17 of the Complaint, Resolution denies for want of personal knowledge the allegations regarding the Apache's religious beliefs, traditions, and relationship to Oak Flat. Resolution denies that the Western Apaches own interests in the land to be conveyed to Resolution under the Act and otherwise denies the remaining allegations in Paragraph 17 of the Complaint.

18.     Resolution denies for want of personal knowledge the allegations in Paragraph 18 of the Complaint. To the extent Plaintiff implies that the allegations apply to Resolution or the land exchange under the Act, Resolution denies the allegations in Paragraph 18 of the Complaint.

19.     Resolution denies for want of personal knowledge the allegations in Paragraph 19 of the Complaint. To the extent Plaintiff implies that the allegations apply to Resolution or the land exchange under the Act, Resolution denies the allegations in Paragraph 19 of the Complaint.[2]

20.     The allegations in Paragraph 20 of the Complaint contain legal conclusions to which no response is required. To the extent a response may be required, Resolution denies the allegations in Paragraph 20 of the Complaint and notes the improbability that the Forest Service has a trust responsibility over or owes fiduciary duties to a 501(c)(3) organization such as Plaintiff. To the extent a response to "MAP 1" and its caption is required, Resolution responds that the authority referenced speaks for itself.

21.     Paragraph 21 of the Complaint consists of citations to various news articles and other external authorities. To the extent a response is required, Resolution responds that the terms of the documents and authority referenced speak for themselves, without

---

[2] To the extent a response to Footnote 2 of the Complaint is required, Resolution responds  that the authority referenced speaks for itself.

admitting the accuracy of the contents therein. Resolution denies the remaining allegations in Paragraph 21 of the Complaint.[3, 4]

## JURISDICTION AND VENUE

22.     In response to the allegations in Paragraph 22, Resolution admits that Plaintiff has sued the United States under various federal laws and that the Court would have jurisdiction over Plaintiff's claims if those claims raised a justiciable controversy. Resolution denies that Plaintiff has any right to relief hereunder and otherwise denies the remaining allegations in Paragraph 22.

23.     In response to the allegations in Paragraph 23, Resolution admits (1) venue is proper in the District of Arizona, (2) the Project is located in Pinal and Gila Counties, and (3) Plaintiff has named as Defendants officers and employees of the United States and the Department of Agriculture. Resolution denies for want of personal knowledge the location of Plaintiff's principal place of business. To the extent a response is required to "MAP 2", "MAP 3", and their captions, Resolution responds that the authority referenced speaks for itself. Resolution denies the remaining allegations in Paragraph 23.

## IDENTIFICATION OF THE PARTIES

24.     Resolution denies for want of personal knowledge the allegations in Paragraph 24 of the Complaint.

25.     Resolution denies the allegations in Paragraph 25 of the Complaint.

26.     In response to the allegations in Paragraph 26 of the Complaint, Resolution admits that, at the time Plaintiff's lawsuit was filed, Sonny Perdue was the Secretary of the Department of Agriculture, and that Tom Vilsack is the current Secretary. The remainder of Paragraph 26 consists of Plaintiff's characterization of federal laws, whose terms and provisions speak for themselves, and as to which no response is required. To

---

[3]To the extent a response to Footnote 3 of the Complaint is required, Resolution responds that the authority referenced speaks for itself.
[4] To the extent a response to Footnote 4 of the Complaint is required, Resolution responds that the authority referenced speaks for itself.

the extent a response is required, Resolution denies that Plaintiff is entitled to any relief under the referenced laws and denies the remaining allegations in Paragraph 26.

27.     In response to the allegations in Paragraph 27 of the Complaint, Resolution admits that, at the time Plaintiff's lawsuit was filed, Vicki Christiansen was the Chief of the Forest Service and that Randy Moore is the current Chief. The remainder of Paragraph 27 consists of Plaintiff's characterization of federal laws, whose terms and provisions speak for themselves, and as to which no response is required. To the extent a response is required, Resolution denies that Plaintiff is entitled to any relief under the referenced laws and denies the remaining allegations in Paragraph 27.

28.     In response to the allegations in Paragraph 28 of the Complaint, Resolution admits that Neil Bosworth is the Supervisor of the Tonto National Forest and an employee of the Forest Service. The remainder of Paragraph 28 consists of Plaintiff's characterization of federal laws, whose terms and provisions speak for themselves, and as to which no response is required. To the extent a response is required, Resolution denies that Plaintiff is entitled to any relief under the referenced laws and denies the remaining allegations in Paragraph 28.

29.     In response to the allegations in Paragraph 29 of the Complaint, Resolution admits that Tom Torres was the Acting Supervisor of Tonto National Forest. The remainder of Paragraph 29 consists of Plaintiff's characterization of federal laws, whose terms and provisions speak for themselves, and as to which no response is required. To the extent a response is required, Resolution denies that Plaintiff is entitled to any relief under the referenced laws and denies the remaining allegations in Paragraph 29.

**ADDITIONAL FACTUAL ALLEGATIONS**

30.     In response to the allegations in Paragraph 30 of the Complaint, Resolution admits that: (1) the Forest Service, through the Secretary of Agriculture, announced its intent to publish a final EIS on January 15, 2021, (2) the Forest Service did publish the final EIS on January 15, 2021, and then later rescinded it to allow further consultation

with tribes with cultural ties to the project area and others, and (3) the act of publication of the EIS triggers a 60-day timeframe under the Act to effectuate conveyance to Resolution of the land subject of the Act. Resolution denies the remaining allegations in Paragraph 30 of the Complaint.[5, 6, 7]

31.     Resolution admits the allegations in Paragraph 31 of the Complaint and responds that the provisions of the Act speak for themselves.

32.     Resolution admits the allegations in Paragraph 32 of the Complaint and responds that the provisions of the Act speak for themselves.

33.     Resolution denies for want of personal knowledge the allegations in Paragraph 33 of the Complaint.

34.     In response to the allegations in Paragraph 34 of the Complaint, Resolution admits that, in compliance with the Act and NEPA, the Forest Service has consulted with tribes with cultural ties to the project area and individual members of those tribes regarding the land conveyance. Resolution lacks knowledge regarding the extent of those communications. Resolution denies the remaining allegations in Paragraph 34.

35.     Resolution denies for want of personal knowledge the allegations in Paragraph 35 of the Complaint.

36.     Resolution admits that the Forest Service announced in advance of publication its intent to publish on January 15, 2021 the final EIS. Resolution denies for want of personal knowledge the allegations regarding when or how Plaintiff learned that the final EIS was to be published on January 15, 2021. Resolution denies the remaining allegations in Paragraph 36 of the Complaint.

---

[5] To the extent a response to Footnote 5 of the Complaint is required, Resolution responds  that the authority referenced speaks for itself.
[6] To the extent a response to Footnote 6 of the Complaint is required, Resolution responds  that the authority referenced speaks for itself.
[7] To the extent a response to Footnote 7 of the Complaint is required, Resolution responds  that the authority referenced speaks for itself.

37.     Resolution denies for want of personal knowledge the allegations in Paragraph 37 of the Complaint.

38.     Resolution admits that the final EIS was initially published before January 20, 2021, and that it was subsequently rescinded. Resolution denies the remaining allegations in Paragraph 38 of the Complaint for want of personal knowledge.

39.     Resolution denies the allegations in Paragraph 39 of the Complaint.

40.     In response to the allegations in Paragraph 40, Resolution again responds that the term Oak Flat is ambiguous and may refer to different areas of land. Resolution also responds that the nature and extent of any subsidence is dependent upon further exploration work, and that even if Resolution proceeds to mine development, perceptible subsidence will not occur for years. To the extent a response to the photo and its caption in Paragraph 40 is required, Resolution responds that the authority referenced speaks for itself. Resolution denies the remaining allegations in Paragraph 40 of the Complaint.

41.     Resolution denies for want of personal knowledge the allegations in Paragraph 41 of the Complaint.[8]

## CLAIMS

## COUNT 1

**Violation of the Fifth Amendment to the United States Constitution
Due Process (Inadequate and Ineffective Notice)**

42.     Resolution incorporates its responses to Paragraphs 1-41 of the Complaint.

43.     Resolution denies for want of personal knowledge the allegations in Paragraph 43 of the Complaint.

44.     Resolution denies the allegations in Paragraph 44 of the Complaint.

45.     Resolution denies the allegations in Paragraph 45 of the Complaint.

---

[8] To the extent a response to Footnote 8 of the Complaint is required, Resolution responds  that the authority referenced speaks for itself.

## COUNT 2

**Violation of the First Amendment to the United States Constitution
Petition Clause and Right to a Remedy**

46.     Resolution incorporates its responses to Paragraphs 1-45 of the Complaint.

47.     Resolution denies the allegations in Paragraph 47 of the Complaint and notes that the final EIS published on January 15, 2021 was later rescinded.

48.     Resolution denies the allegations in Paragraph 48 of the Complaint.

## COUNT 3

**Breaches of Trust and Fiduciary Duties
Demand for Protection of Assets, a Full Accounting, and Damages**

49.     Resolution incorporates its responses to Paragraphs 1-48 of the Complaint.

50.     Resolution incorporates its responses to the image incorporated by Plaintiff in Paragraph 50, and further responds that the authority referenced speaks for itself.

51.     Resolution denies the allegations in Paragraph 51 of the Complaint.

52.     Resolution denies for want of personal knowledge the allegations in Paragraph 52 of the Complaint.

53.     The allegations in Paragraph 53 of the Complaint contain legal conclusions to which no response is required. To the extent a response may be required, Resolution denies the allegations in Paragraph 53 of the Complaint.

54.     Resolution denies the allegations in Paragraph 54 of the Complaint.

55.     Resolution denies the allegations in Paragraph 55 of the Complaint.

56.     Resolution denies the allegations in Paragraph 56 of the Complaint.

57.     Resolution denies the allegations in Paragraph 57 of the Complaint.

## COUNT 4

**Violation of the First Amendment to the United States Constitution
Free Exercise Clause - Substantial Burden**

58.     Resolution incorporates its responses to Paragraphs 1-57 of the Complaint.

59.    Resolution denies for want of personal knowledge the allegations in Paragraph 59 of the Complaint.

60.    Resolution denies the allegations in Paragraph 60 of the Complaint.

61.    Resolution denies the allegations in Paragraph 61 of the Complaint.

62.    Resolution denies the allegations in Paragraph 62 of the Complaint.

63.    Resolution denies the allegations in Paragraph 63 of the Complaint.

64.    Resolution denies the allegations in Paragraph 64 of the Complaint.

65.    Resolution denies the allegations in Paragraph 65 of the Complaint.

66.    Resolution denies the allegations in Paragraph 66 of the Complaint.

67.    Resolution denies the allegations in Paragraph 67 of the Complaint.

68.    Resolution denies the allegations in Paragraph 68 of the Complaint.

69.    Resolution denies the allegations in Paragraph 69 of the Complaint.

70.    Resolution denies the allegations in Paragraph 70 of the Complaint.

## <u>COUNT 5</u>

### Violation of the Religious Freedom Restoration Act
### Substantial Burden

71.    Resolution incorporates its responses to Paragraphs 1-70 of the Complaint.

72.    Resolution denies for want of personal knowledge the allegations in Paragraph 72 of the Complaint.

73.    Resolution denies the allegations in Paragraph 73 of the Complaint.

74.    Resolution denies the allegations in Paragraph 74 of the Complaint.

75.    Resolution denies the allegations in Paragraph 75 of the Complaint.

76.    Resolution denies the allegations in Paragraph 76 of the Complaint.

77.    Resolution denies the allegations in Paragraph 77 of the Complaint.

78.    Resolution denies the allegations in Paragraph 78 of the Complaint.

79.    Resolution denies the allegations in Paragraph 79 of the Complaint.

## COUNT 6

**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause**
**Intentional Discrimination**

80.     Resolution incorporates its responses to Paragraphs 1-79.

81.     Resolution denies for want of personal knowledge the allegations in Paragraph 81 of the Complaint.

82.     Resolution denies for want of personal knowledge the allegations in Paragraph 82 of the Complaint.

83.     Resolution denies for want of personal knowledge the allegations in Paragraph 83 of the Complaint.

84.     Resolution denies the allegations in Paragraph 84 of the Complaint.

85.     Resolution denies the allegations in Paragraph 85 of the Complaint.

86.     Resolution denies the allegations in Paragraph 86 of the Complaint. To the extent a response to the photo and its caption in Paragraph 86 is required, Resolution responds that the authority referenced speaks for itself.

87.     Resolution denies the allegations in Paragraph 87 of the Complaint. To the extent a response to the photo and its caption in Paragraph 87 is required, Resolution responds that the authority referenced speaks for itself.

## PRAYER FOR RELIEF

Resolution denies that Plaintiff is entitled to any forms of relief, including those specifically listed in the Prayer for Relief in Plaintiff's Complaint.

## JURY DEMAND

Resolution submits Plaintiff is not entitled to a jury on some or all of its claims and requested relief.

## GENERAL AND AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to Plaintiff's Complaint, Resolution alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

1.       Plaintiff's Complaint fails to state a claim upon which relief may be granted as to Resolution.

### SECOND AFFIRMATIVE DEFENSE

2.       Plaintiff's claims and requests for relief are barred in whole or in part because any actions taken by Defendants and/or Resolution with respect to the subject matter alleged in the Complaint were undertaken in good faith and constitute lawful, proper, justified, and/or privileged conduct.

### THIRD AFFIRMATIVE DEFENSE

3.       Plaintiff's claims and requests for relief are barred in whole or in part by the applicable statutes of limitations.

### FOURTH AFFIRMATIVE DEFENSE

4.       Plaintiff's claims and requests for relief are barred in whole or in part by laches.

### FIFTH AFFIRMATIVE DEFENSE

5.       Plaintiff's claims and requests for relief are barred in whole or in part because Plaintiff did not properly exhaust its administrative remedies prior to bringing this action.

### SIXTH AFFIRMATIVE DEFENSE

6.       Plaintiff's claims and requests for relief are barred in whole or in part by res judicata and/or collateral estoppel and/or law of the case based upon the prior judicial decisions with respect to the matters raised in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

7.       Plaintiff lacks standing to bring this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EIGHTH AFFIRMATIVE DEFENSE

8.      Plaintiff has waived its right to assert some or all of its requests for relief.

## NINTH AFFIRMATIVE DEFENSE

9.      Plaintiff is estopped from asserting some or all of its claims and requests for relief.

## TENTH AFFIRMATIVE DEFENSE

10.      This Court lacks subject matter jurisdiction to review some or all of Plaintiff's claims and requests for relief.

## FURTHER AFFIRMATIVE DEFENSE

11.      Resolution reserves the right to assert additional affirmative defenses that become known to it upon further investigation, disclosure, or discovery.

Respectfully submitted this 21st day of April, 2023.

**PERKINS COIE LLP**

By: /s/ Samantha Burke
Christopher D. Thomas
Diane M. Johnsen
Shane R. Swindle
Andrea J. Driggs
Janet M. Howe
Samantha J. Burke
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

*Attorneys for Defendant-Intervenor*
*Resolution Copper Mining, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2023, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

I hereby certify that on April 21, 2023, I served the attached document by first class mail on Judge Logan, United States District Court of Arizona, 401 West Washington Street, SPC 82, Phoenix, AZ 85003-2161.

/s/ Shawne Murphy

161634865.