Michael V. Nixon, pro hac vice
(OR Bar #893240)
101 SW Madison Street #9325
Portland, OR 97207
Telephone: 503.522.4257
Email: *michaelvnixon@yahoo.com*

Clifford Levenson (AZ Bar #014523)
5119 North 19th Avenue
Suite K
Phoenix, AZ 85015
Telephone: 602.258.8989
Fax: 602.544.1900
Email: *cliff449@hotmail.com*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| Apache Stronghold,<br><br>                Plaintiff,<br>   v.<br><br>United States of America, *et al.*,<br><br>                Defendants. | No. 2:21-cv-00050-PHX-SPL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO RESOLUTION COPPER MINING LLC'S MOTION FOR LIMITED LIFT OF STAY AND TO INTERVENE** |

# INTRODUCTION

Plaintiff Apache Stronghold filed this lawsuit over two years ago to stop the Forest Service from transferring Oak Flat to Resolution Copper Mining LLC for destruction. This is one of three lawsuits seeking to stop the transfer and destruction of Oak Flat—all filed within ten days of each other in January 2021. Resolution moved quickly to intervene in two of those cases: filing a motion to intervene only one day after the complaint in *San Carlos Apache Tribe v. U.S. Forest Service*, No. 2:21-cv-68 (D. Ariz.), and 30 days after the complaint in *Arizona Mining Reform Coalition v. U.S. Forest Service*, No. 2:21-cv-122 (D. Ariz.). Yet Resolution intentionally and strategically chose not to intervene in this one.

The other two cases were promptly stayed and have remained stayed for 25 months. But this case has now proceeded extensively through a preliminary-injunction hearing with live witness testimony, repeated briefing on the merits (including 17 amicus briefs), substantive rulings on core legal issues, Ninth Circuit briefing and oral argument, a Ninth Circuit decision, and a Ninth Circuit en banc rehearing (including multiple amici participating in oral argument)—and Resolution never once sought to intervene or even to file an amicus brief.

Now, having sat on its hands for over two years, Resolution suddenly seeks to lift the stay and intervene. But it offers no explanation for its long delay here when it moved so quickly in the other cases. Nor does it explain why the United States government cannot be trusted to adequately represent its interests when the United States is vigorously litigating for the precise objective Resolution seeks: upholding the land transfer. Because Resolution's motion to intervene is untimely, and it has failed to rebut the presumption of adequate representation, its motion should be denied.

# ARGUMENT

"Courts in this circuit have recognized that the requirements of Rule 24(a)(2) may be broken down into four elements, each of which must be demonstrated in order to provide a non-party with a right to intervene: (1) the application must be timely; (2) the applicant

must have a 'significantly protectable' interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("*LULAC*"). "The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

*LULAC* is instructive. There, several plaintiffs filed multiple lawsuits seeking to enjoin a California ballot initiative addressing illegal immigration. Four sets of parties promptly intervened as plaintiffs. But two years after the suits were filed, and eighteen months after the other interventions, a sponsor and co-author of the ballot initiative sought to intervene as a defendant. The Ninth Circuit acknowledged that "no one can deny" the proposed intervenor's "'unique perspective' on the validity of Proposition 187" or its "vested interest in 'asserting [its] constitutional validity.'" 131 F.3d at 1304 n.3. Nevertheless, it denied intervention as untimely, noting that the intervenor "waited twenty-seven months after the plaintiffs filed their original complaints," and "at least eighteen months after" the other interventions, and "was unable convincingly to explain its delay." *Id.* at 1304, 1308. The Court also rejected the intervenor's arguments on adequacy of representation, explaining that the State defendants "vigorously defended Proposition 187" in the litigation, and "the prospect of inadequate representation" in the future was "purely speculative." *Id.* at 1304-05.

So too here. As explained below, Resolution likewise "waited twenty-seventh months" after this case was filed, even as it promptly intervened in parallel cases, and it has offered no explanation for its delay. Nor has it rebutted the presumption that the government adequately represents its interests. Its request for intervention should be denied.

**I. Resolution's motion to intervene is untimely.**

"Timeliness is the threshold requirement for intervention as of right. In other words, if [the Court] find[s] that the motion to intervene was not timely, [it] need not reach any of the remaining elements of Rule 24." *LULAC*, 131 F.3d at 1302 (cleaned up). Courts assess timeliness by considering "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* "In considering these factors, however, [courts] must bear in mind that any substantial lapse of time weighs heavily against intervention." *Id.* (cleaned up). Here, given that Resolution "file[d] its motion a full twenty-seven months after the original action[] … w[as] commenced, it fights an uphill battle in its effort to intervene." *Id.*

***Stage of the proceedings.*** Resolution attempts to characterize the case as "very much in its preliminary stages." Mot. 5. But this myopic "focus on what ha[s] *not* yet occurred … ignores what ha[s] already occurred." *LULAC*, 131 F.3d at 1303. The parties briefed a motion for a temporary restraining order and a preliminary injunction. The Court held a hearing where it heard witness testimony. The Court granted other interested amici leave to file a brief. Dkt. 55. Resolution could have done the same, but it opted not to. This Court then ruled on the injunction motion, resolving several of the central legal questions in the case. Dkt. 57.

And the case has progressed extensively since then. Apache Stronghold appealed the denial of its injunction to the Ninth Circuit, where the parties briefed an emergency motion for an injunction pending appeal, briefed the ordinary merits appeal, and briefed the question of rehearing en banc. The Ninth Circuit received more than a dozen amicus briefs, issued an opinion and 18-page dissent on the request for emergency relief, heard oral argument on the merits, issued a 58-page panel opinion and 23-page dissent, *sua sponte* granted rehearing en banc, and heard oral argument en banc. The en banc Ninth Circuit even allowed multiple amici to participate in oral argument. Again, Resolution could have participated at any of these stages, but strategically chose not to.

As the Ninth Circuit explained in *LULAC*, "the fact that the district court has substantively—and substantially—engaged the issues in this case weighs heavily against allowing intervention." 131 F.3d at 1303. Here, the fact that the Ninth Circuit has done so, too, makes intervention even less timely.

***Prejudice.*** After such a long delay, allowing Resolution to intervene on the eve of the FEIS being republished would also prejudice Apache Stronghold. Admitting Resolution "as a party will have the inevitable effect of prolonging the litigation to some degree." *LULAC*, 131 F.3d at 1304. But here the risk from delay is particularly severe because of Apache Stronghold's likely need to seek emergency protection if the FEIS is republished before the Ninth Circuit acts.

The government has indicated that it plans to republish the FEIS this summer, Dkt. 106, and that it is not waiting for the Ninth Circuit's en banc decision before republishing. Oral Argument at 44:02–44:55, https://www.ca9.uscourts.gov/media/video/?20230321/21-15295/. Republishing would trigger an immediate, 60-day deadline to transfer Oak Flat. If the Ninth Circuit has not halted the transfer by that time, Apache Stronghold would need to seek emergency relief to prevent irreparable harm to its rights under RFRA, the First Amendment, and the Treaty of 1852. "Introduction of a new party at that late stage could … result[] in irreversible prejudicial delay in a case where time [is] of the essence." *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990).

***Reason for the delay.*** "A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *Alisal Water*, 370 F.3d at 923 (cleaned up). Resolution knew about this case and its significance over two years ago, as evidenced by its counsel's advanced request for a transcript and pro hac vice admission less than 15 days after the complaint was filed.[1] It also showed it was

---

[1] *See* Dkt. 26 ("TRANSCRIPT REQUEST (3rd PARTY) by Christopher D. Thomas of Perkins Coie LLP for proceedings held on 02/03/2021); 1/27/21 ("Remark: Pro hac vice

capable of intervening by immediately intervening in the other two cases. But it chose not to intervene here for over 27 months. This long delay alone "weighs heavily against intervention" and makes Resolution's motion an "uphill battle." *LULAC*, 131 F.3d at 1302.

"Even more damaging to [Resolution's] motion than the twenty-seven month delay itself, however, is its failure adequately to explain … the *reason* for its delay." *Id.* at 1304; *accord Smith v. Marsh*, 194 F.3d 1045, 1047 (9th Cir. 1999) ("The district court denied the motion to intervene, holding that it was untimely because it was made fifteen months after commencement of the Applicants' lawsuit and without adequate explanation for the delay."); *Alisal Water*, 370 F.3d at 923 (affirming denial of intervention where movant had "not explained why it delayed so long before attempting to intervene" (cleaned up)).

Here, Resolution hasn't even attempted to explain why it promptly intervened in the other two cases seeking to stop the land transfer, but waited over two years to intervene in this one. It briefly gestures to the "four weeks" it took for this Court to resolve the preliminary-injunction motion—which could be read as hinting at an argument that Resolution didn't have time to intervene then. Mot. 5. But Resolution intervened in the *San Carlos Apache Tribe* lawsuit just one day after the complaint was filed. Dkt. 5, Case No. 2:21-cv-00068 (January 15, 2021). Resolution also says this case has been "stayed" pending resolution of the Ninth Circuit appeal. Mot. 5. But the stay remains in place, and Resolution is moving to lift it. If it can ask to lift the stay now, it could have done the same years ago. Lastly, it says it seeks to intervene "in anticipation of remand of the case to this Court." Mot. 5. But that doesn't explain why it chose not to intervene in this case in the first place, even as it promptly intervened in the other cases.

The fact remains that Resolution "slept on its intervention rights for more than two years. When it awoke, it was unable convincingly to explain its delay." *LULAC*, 131 F.3d

---

motion(s) granted for Jennifer A MacLean on behalf of Intervenor Defendant Resolution Copper Mining LLC").

6

at 1308. Thus, the motion is untimely and should be denied.[2]

## II. Resolution's interests are adequately represented.

"The prospective intervenor bears the burden of demonstrating that existing parties do not adequately represent its interests." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996). "Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (cleaned up). A mere "difference in strategy" does not overcome this presumption. *Id.*

Here, Resolution and the United States share the same "ultimate objective" of defending the land transfer statute against each of Apache Stronghold's claims. *LULAC*, 131 F.3d at 1305. And "there can be no question that [the government has] vigorously defended [the statute] in the context of the present lawsuit at every turn." *Id.* Thus, the presumption of adequate representation fully applies.

Resolution has not rebutted this presumption by alleging "any substantive disagreement between it and the existing [defendant]," *id.* at 1306, nor has it identified any arguments that the government is not "capable and willing to make," *Nw. Forest*, 82 F.3d at 838. Instead, it suggests it should be allowed to intervene simply because public and private interests "may" diverge on some unspecified point at some unidentified time in the future. Mot. 10. But that was the same argument rejected in LULAC as "purely speculative." *LULAC*, 131 F.3d at 1304. Indeed, this sort of "prospect for a future divergence of interests"

---

[2] Resolution should not be permitted in its reply to proffer new explanations for the delay that Apache Stronghold has no opportunity to respond to. *See Marsh*, 194 F.3d at 1052 (refusing to consider arguments in putative intervenors' reply brief that "finally offer[ed] a fully articulated explanation for their delay" because "arguments not raised by a party in its opening brief are deemed waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *ABC Water LLC v. APlus Water LLC*, No. 18-cv-4851-PHX-SPL, 2019 WL 3858193, at *3 (D. Ariz. Aug. 16, 2019) ("It is well settled that a party cannot rely on arguments made in a reply that are not made in the original motion.").

(*id.* at 1307) is present in *every* case where the government represents a private party's interests—and it would mean that private parties would have a right to intervene in *every* lawsuit challenging any state or federal statute. That gets the presumption of adequate representation precisely backwards. And this presumption of adequacy is "nowhere more applicable than in a case where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). That's this case.

Resolution's only response is that the Forest Service will "not necessarily" be able to speak to the extent or timing of "subsidence"—that is, the crater that will swallow Oak Flat if the proposed mining operation proceeds. Mot. 10. But the government's 2,700-page FEIS—which Resolution has not challenged—addresses subsidence (and many other aspects of the mine) at great length, including the very "particularity and data" Resolution claims (at 10) only it can provide. Indeed, the FEIS discusses "subsidence" over 1,100 times. *See, e.g.*, 1-FEIS-162 to 199 ("Geology, Minerals, and Subsidence"). Moreover, the government *has* repeatedly argued (incorrectly, in Apache Stronghold's view) that the delay in subsidence defeats the need for immediate injunctive relief.[3] "In sum, there simply is no reason to believe … that [the government defendants] cannot be counted on to argue vehemently in favor of" the transfer statute. *LULAC*, 131 F.3d at 1306 (cleaned up; citation omitted). "In fact, their actions suggest precisely the opposite conclusion." *Id.*

---

[3] *See, e.g.*, Dkt. 18 at 3 ("A subsidence event caused by mining at Oak Flat is not imminent."); *id.* at 27 ("The FEIS states, at ES-3.2, that the surface crater is not expected to break through until six years after mining begins."); Dkt. 18-1 ¶ 8; CA9 Dkt. 18-1 at 1 ("No irreversible, surface-impacting mining activity will occur for at least two years."); *id.* at 9 ("Active mining will not occur at the site for several years at the earliest (and subsidence at the site is not expected until a decade from now)."); CA9 Dkt. 51 at 59 ("Active mining will not occur at the site for several years at the earliest. … Any actions that could lead to subsidence are years away, and no irreparable harm to the land will occur absent injunctive relief.").

Finally, Resolution's insistence that its critical interests are inadequately represented cannot be squared with its decision to take no action in this case for over two years. Amici have filed a total of *seventeen* briefs at every stage of this case—one in district court, three at the Ninth Circuit emergency motion stage, five at the Ninth Circuit panel stage, and eight on en banc rehearing. Multiple amici were even permitted to participate in oral argument. Resolution made no effort to participate at any stage of the litigation and has offered no explanation for what has changed. Its request should be denied.

**III. Permissive intervention is unwarranted.**

Resolution's request for permissive intervention should be denied for similar reasons. After failing to participate in this case for over two years, it bears a heavy burden to explain why circumstances have now changed. It has failed to do so.

"As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *LULAC*, 131 F.3d at 1308. "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than [they] do with intervention as of right. *A fortiori,* [the] previous conclusion that [Resolution's] intervention motion was untimely is controlling." *Id.*

Furthermore, even assuming that Resolution has a unique perspective to offer, it has not explained why participating as an amicus is insufficient. And given that Resolution declined to do even that much during the past two years of litigation, it cannot show that it suddenly needs more than amicus participation to protect its interests now.

**IV. Lifting the stay is unwarranted.**

For similar reasons, Resolution has not demonstrated why this Court must lift the stay and resolve the question of intervention *now*. This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). In exercising this discretion, courts assess "competing interests" like "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice

9

measured in terms of the simplifying or complicating of issues." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Here, Resolution has offered no argument or authority in support of lifting the stay, nor has it explained how it would be prejudiced if the case remains stayed. It says it seeks to intervene "in anticipation of remand." Mot. 5. But nothing stops Resolution from seeking intervention *after* remand—particularly after it has slept on intervention for over two years and has offered no explanation for doing so. Resolution also suggests it wants to be involved if Apache Stronghold makes "another expedited request for injunctive relief" before remand. Mot. 1. But if it becomes necessary for Apache Stronghold to seek such relief, that is precisely when the potential for delay from having another party in the case would be the most prejudicial. *See supra* at 5. If Resolution wishes to be heard in such expedited proceedings, it can file an amicus brief, as others have previously done. Accordingly, Resolution's motion should be denied.

## CONCLUSION

Resolution's motion to intervene should be denied.

Dated: May 5, 2023

Respectfully submitted,

/s/ Michael V. Nixon
Michael V. Nixon, *pro hac vice*
(OR Bar #893240)
101 SW Madison Street #9325
Portland, OR 97207
Telephone: 503.522.4257
Email: *michaelvnixon@yahoo.com*

Clifford Levenson (AZ Bar #014523)
5119 North 19th Avenue, Suite K
Phoenix, AZ 85015
Telephone: 602.258.8989
Fax: 602.544.1900
Email: *cliff449@hotmail.com*