Christopher D. Thomas (#010482)
Diane M. Johnsen (#007634)
Shane R. Swindle (#011738)
Andrea J. Driggs (#023633)
Janet M. Howe (#034615)
Samantha J. Burke (#036064)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
cthomas@perkinscoie.com
djohnsen@perkinscoie.com
sswindle@perkinscoie.com
adriggs@perkinscoie.com
jhowe@perkinscoie.com
sburke@perkinscoie.com
docketPHX@perkinscoie.com

*Attorneys for Defendant-Intervenor
Resolution Copper Mining, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Apache Stronghold,<br><br>  Plaintiff,<br><br>  v.<br><br>United States of America, *et al.*,<br><br>  Defendants.<br><br>Resolution Copper Mining, LLC,<br><br>  Defendant-Intervenor. | No. 2:21-cv-00050-PHX-SPL<br><br>**REPLY IN SUPPORT OF RESOLUTION COPPER MINING, LLC'S MOTION TO INTERVENE** |

In its response to Resolution Copper Mining, LLC's ("Resolution") Motion to Intervene, Plaintiff does not dispute that Resolution has significant, protectable interests at stake in this litigation—interests that will be impaired if the relief Plaintiff seeks is granted.

Instead, Plaintiff argues that Resolution's request for intervention comes too late. But far from being too late, Resolution is moving to intervene before an answer to the complaint has even been filed in the case. Plaintiff's repeated references to this case being 27 months old are a red herring because the case has been stayed for nearly all that time. And critically, the proceedings are at an even earlier point in relation to the republication of the Final Environmental Impact Statement ("FEIS") than they were two years ago. Resolution's request is therefore timely.

Plaintiff also argues that Defendants will adequately represent the interests of Resolution because they share the same "ultimate objective." But Plaintiff ignores the well-established principle that the government's interests in serving the public are generally broader—and diverge from—a private party's economic interests. Resolution and the government do not have identical interests here, but even if they did, Resolution is in a far better position to address the issues regarding the mine project itself and any potential effects it may have on the land, which go to the heart of this case. And in fact, as discussed below, the need for Resolution's particular knowledge and perspective on these issues was recently revealed in the appeal proceedings before the Ninth Circuit.

In short, Resolution meets the requirements to intervene as of right under Rule 24(a) and respectfully asks this Court to grant its Motion. In the alternative, the Court may exercise its discretion to grant permissive intervention under Rule 24(b).

**A.      Resolution is entitled to intervene as of right.**

Plaintiff does not dispute Resolution's significant, protectable interests at stake in this litigation that will be impaired by the relief sought by Plaintiff, and therefore concedes this point. Plaintiff contends only that Resolution's Motion to Intervene is untimely and that Resolution's interests will be adequately represented by the current parties. [Dkt. 112, "Resp."] Plaintiff is wrong on both points.

**1. Resolution has timely moved to intervene.**

Resolution's Motion to Intervene is timely, and Plaintiff's incorrect characterizations of a single case do nothing to demonstrate otherwise. The Court considers three factors in assessing timeliness: the stage of proceedings, prejudice to the parties, and reason for delay. All factors strongly weigh in favor of a timeliness finding.

**Early stages of proceedings in the district court.** As Resolution noted previously, this case is still in the very early stages. [*See* Dkt. 109, "Mot." at 4] Aside from some immediate (and highly efficient) provisional relief proceedings right after the Complaint was filed, essentially nothing has occurred in this case while before this Court. Indeed, the case has been stayed for nearly its entire history while the Ninth Circuit reviews this Court's decision on Plaintiff's request for a preliminary injunction.

Relying almost exclusively on *League of United Latin American Citizens v. Wilson* ("*LULAC*"), 131 F.3d 1297, 1302 (9th Cir. 1997), Plaintiff claims Resolution's argument on this point "ignores what has already occurred" in the case. [Resp. at 4 (cleaned up)] But it is Plaintiff who ignores everything that had happened in *LULAC,* which makes that case inapposite. In addition to early provisional relief proceedings and a related appeal, the following had occurred before the proposed intervenor moved to intervene in *LULAC*:

(1) The court provisionally certified a plaintiff class under Rule 23;
(2) Four other parties successfully intervened;
(3) The defendants filed a motion to dismiss;
(4) The district court ruled on the motion to dismiss;
(5) The defendants filed an answer;
(6) The parties engaged in discovery for nine months;
(7) The plaintiffs filed a motion for summary judgment;
(8) The district court heard argument on the summary judgment motion;
(9) The court issued a ruling on plaintiff's summary judgment motion; and
(10) The parties were entering final pretrial stages.

1    As the Ninth Circuit aptly noted, "a lot of water had already passed underneath [the] litigation bridge" and "the litigation was, by all accounts, beginning to wind itself down." *Id.* at 1303-04. The same simply cannot be said here—not even close.

Because so little occurred before this case was stayed, Plaintiff tries to shift focus onto what has happened at the Ninth Circuit. [Resp. at 2, 4] But as Plaintiff's case in chief, *LULAC*, makes clear, it is what happens at the district court that matters: "We believe that the fact that the **district court** has substantively—and substantially—engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2)." *LULAC*, 131 F.3d at 1303 (emphasis added). The *LULAC* court made a mere passing reference to the interim appellate proceedings that had taken place in that case, and such proceedings did not appear to factor into the court's timeliness analysis. *See id.* ("[B]y the time [the proposed intervenor] got around to attempting to intervene, the **district court** and the original parties had covered a lot of legal ground together . . . .") (emphasis added).

*Kalbers v. United States Department of Justice*, 22 F.4th 816 (9th Cir. 2021), a more recent case, provides the proper framework for evaluating Resolution's motion. The plaintiff there filed a lawsuit against the federal government seeking records surrounding the Volkswagen emissions controversy. Volkswagen had been aware of the records request before the lawsuit was filed, and the DOJ provided a courtesy copy of the complaint to Volkswagen a few weeks after the case was filed. *Id.* at 820. Over the next eleven months, the DOJ filed an answer, the parties litigated a discovery dispute, filed a Joint Rule 26(f) Report, and participated in a settlement conference. *Id.* The case was also stayed for one month. *Id.* The DOJ then "formally advise[d]" Volkswagen of the lawsuit as the "proceedings before the district court were ramping up." *Id.* After the district court ordered summary judgment motions and the production of a document that implicated Volkswagen, Volkswagen intervened—nearly a year after litigation had actively proceeded.

The district court denied intervention on timeliness grounds, but the Ninth Circuit reversed. Reiterating the well-established rule that "length of time that has passed" does not control, the court noted the case was still "in its early stages" and that Volkswagen "sought

-3-

1  to intervene just as [the] case began gathering speed"—not as it was "within sight of the
2  terminal." *Id.* at 826. The court also focused on the "combination of circumstances [that]
3  sparked Volkswagen's decision to intervene," finding the DOJ's formal advisement to
4  Volkswagen and the district court's order to produce a document that would implicate
5  Volkswagen were a sufficient "change [in] circumstances" to warrant Volkswagen's
6  intervention. *Id.* at 820, 827.

7  Likewise, here, Resolution is moving to intervene before the case resumes, and
8  certainly well before its terminus. And the "change[s] [in] circumstances" here provide an
9  even stronger case for Resolution to intervene than in *Kalbers*. A few days before
10  Resolution moved to intervene, the Forest Service represented in a court filing that it would
11  soon announce the 60-day notice in advance of the FEIS's republication. Joint Status
12  Report, *San Carlos Apache Tribe v. U.S. Forest Serv.*, No. 2:21-cv-00068-DWL (D. Ariz.
13  April 17, 2023), Dkt. No. 58. It is expected that, upon that 60-day notice, one or both parties
14  will attempt to lift the present stay and Plaintiff will likely seek provisional relief again.
15  This, in conjunction with the en banc proceedings concluding, represents a change in
16  circumstances that reasonably prompted Resolution's Motion to Intervene now.

17  **No Prejudice.** Plaintiff will experience no prejudice from Resolution intervening
18  either now or in the coming weeks when the parties likely move to lift the stay themselves—
19  and Plaintiff has scarcely attempted to argue otherwise.

20  Plaintiff claims that "[a]dmitting Resolution as a party will have the inevitable effect
21  of prolonging the litigation to some degree." [Resp. at 5] Yet the Ninth Circuit has
22  repeatedly held that a mere prolongment of proceedings because more parties are involved
23  is not prejudice—any additional party will naturally expand the litigation to a degree. *E.g.*,
24  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854, 857-58 (9th Cir. 2016); *Kalbers*, 22
25  F.4th at 825 (noting that "every motion to intervene will complicate or delay a case to some
26  degree" because "three parties are more than two," but "[t]hat is not a sufficient reason to
27  deny intervention").

28

Additionally, without clarifying how or why, Plaintiff suggests it would suffer prejudice by Resolution's intervention because the government intends to republish the FEIS this summer. [Resp. at 5] But in fact, there is *significantly more time* now before the FEIS is republished than there was when Plaintiff filed the Complaint.[1] In relation to the publication of the FEIS, Resolution's Motion is far earlier in the proceedings than it possibly could have been the first time around. Plaintiff's argument on this point thus lacks merit. *See Smith*, 830 F.3d at 857 (prejudice concerns whether the parties' "problems are materially different now than they would have been had" intervention been sought earlier).

**Reason for Delay.** Finally, Plaintiff's claim that Resolution has proffered no reason for its "delay" is incorrect.[2] That is because Resolution *has not delayed* in seeking to intervene. Plaintiff moved for provisional relief immediately after filing this case, and the briefing, hearing, and Court's order on that motion were resolved in just *22 days*. [*See, e.g.*, Dkts. 1, 7, 18, 26, 27, 57] The case has been stayed ever since. Resolution should not be punished because the case has been up on appeal for over two years.

Plaintiff claims that since Resolution now moves to lift the stay for the limited purpose of intervening, it could have done so all along. [Resp. at 6; *see also id.* at 10] That misses the point. Resolution *had no reason* to move to lift the stay until now because the case was being extensively litigated on appeal, there was nothing for the parties to do in the district court, and the Forest Service had not provided the 60-day announcement for the republication of the FEIS. But now the oral arguments on appeal have concluded and the 60-day notice will issue shortly. That notice will likely trigger the parties to try to resume

---

[1] Plaintiff filed this lawsuit upon learning that the Forest Service intended to publish the FEIS later that week, and the government did in fact publish it that same week. [*See* Dkt. 1 ¶ 41] Here, by contrast, the Forest Service has agreed to provide a 60-day advance notice of the republication—giving everyone involved at least two months more time than they had previously.

[2] Plaintiff contends (at 7 n.2) that Resolution is not permitted to offer a reason on reply, but its own case in chief says otherwise. *LULAC*, 131 F.3d at 1304 (noting plaintiffs failed to "explain—either in its original motion to the district court, in its opening *or reply briefs to this court, or at oral argument*—the reason for its delay") (emphasis added).

proceedings here for the first time since the case was stayed. Resolution is merely trying to streamline things by giving the Court and the parties a chance to resolve the intervention motion before a potential future request for provisional relief complicates matters.[3]

Plaintiff also asserts Resolution could have intervened before the case was stayed because Resolution intervened in two other related cases. But Resolution's intervention in those other cases is neither relevant nor necessary because the Ninth Circuit does not require "hasty intervention." *Kalbers*, 22 F.4th at 823. In the end, what matters is whether Resolution delayed in intervening here. It did not.

### B. Resolution's interests may not be adequately represented.

A proposed intervenor's burden to demonstrate inadequacy of representation is "minimal" and is satisfied if the intervenor can demonstrate that representation of its interests by the current parties "may be" inadequate. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). "May be," by definition, does not require certainty.[4] Indeed, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public" for the very reason that the interests of the general public may not always align with the economic interests of a private actor. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (reversing denial of intervention because it was sufficient that "[t]he interests of government and the private sector *may* diverge") (emphasis added);

---

[3] Contrary to Plaintiffs' suggestion (at 9-10), Resolution's Motion provided this exact reason as to why it is moving to intervene now instead of the waiting for the parties to move to lift the stay. [*See* Mot. at 1:11-16]

[4] Plaintiff's suggestion that *LULAC* held to the contrary is incorrect. [*See* Resp. at 7] The proposed intervenor in *LULAC* argued that, because the government defendants were subject to term limits, their interests might diverge from the interests of the defendants' unknown replacements years into the future when the transition in administration was to occur. That is not remotely similar to Resolution's argument here, where the entire case lies ahead.

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973-74 (3d Cir. 1998) ("[T]he government represents numerous complex and conflicting interests in matters of this nature. The straightforward business interests asserted by intervenors here *may* become lost in the thicket of sometimes inconsistent governmental policies.") (emphasis added).

Plaintiff does not acknowledge the above line of cases. Rather, it argues exclusively that Resolution and the United States share the same "ultimate objective," and that a presumption of adequacy of representation therefore exists. *See Citizens for Balanced Use*, 647 F.3d at 898. That ultimate objective, Plaintiff contends, is "defending the land transfer statute against each of Apache Stronghold's claims." [Resp. at 7]

But Plaintiff's view is both overly simplistic and inaccurate. Indeed, if it was enough that a named defendant and intervening defendant both have the objective of "defend[ing]" the subject matter of the lawsuit "against each of [the plaintiff's] claims," (*see* Resp. at 7), the inadequacy or representation prong would rarely ever be met.

Instead, as the Supreme Court recently stated, where the proposed intervenor's "'interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2204 (2022) (quoting 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. Supp. 2023)); *see, e.g.*, *MD Helicopters Inc. v. United States*, No. CV-19-02236-PHX-JAT, 2019 WL 8953136, at *5 (D. Ariz. May 10, 2019) (in government procurement challenge, rejecting argument that government and bid winner shared the same "ultimate objective" to "uphold the [government's] administrative decision" to award intervenor the bid: while their interests overlapped, the government's ultimate objective was an operational military program and intervenor's ultimate objective was receiving the contract award).

Here, Defendants and Resolution have overlapping but distinct interests in this case. For example, as discussed during en banc arguments, Defendants have a strong interest in defending the federal government's general authority to manage and dispose of its own land, as contemplated by the U.S. Constitution. *See* U.S. Const. art. IV, § 3, cl. 2. The Forest

1  Service also has an interest in ensuring its own compliance with a non-discretionary duty
2  commanded by Congress, an interest that exists separate and apart from either the mine or
3  the land itself. And as discussed above, Defendants have an interest in serving the broader
4  needs of the public and their constituents. This is particularly so in a case involving an EIS,
5  whose very purpose is to evaluate various viewpoints and competing needs. By contrast,
6  Resolution's interest is to develop the mine on this particular parcel of land and to protect
7  its $2.3 billion investment in the project.

8  And even assuming Resolution and Defendants shared identical interests,
9  Resolution's interests still may not be adequately represented by the parties. As set forth in
10 Resolution's Motion, courts consider three factors in evaluating adequacy of representation:
11 "(1) whether the interest of a present party is such that it will undoubtedly make all of a
12 proposed intervenor's arguments; (2) whether the present party is capable and willing to
13 make such arguments; and (3) whether a proposed intervenor would offer any necessary
14 elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*,
15 647 F.3d at 898. Again, the burden is not high, particularly where, as here, government
16 interests are inherently broader and different from a private party's interests: "It is sufficient
17 for [Resolution] to show that, because of the difference in interests, it is likely that
18 Defendants will not advance the same arguments as Applicants." *Sw. Ctr. for Biological*
19 *Diversity*, 268 F.3d at 823-24 (assuming for the sake of argument that the parties shared the
20 same ultimate objective but nonetheless finding inadequacy of representation because "[t]he
21 interests of government and the private sector *may* diverge") (emphasis added).

22 Here, the Court need not speculate as to whether the parties are capable of making
23 all of Resolution's arguments or whether Resolution would offer necessary elements in this
24 proceeding that the other parties would not. That was already made plain during the
25 proceedings before the Ninth Circuit.

26 Proceedings on Plaintiff's preliminary injunctive relief request centered on just one
27 of the *Winter* factors: likelihood of success on the merits. [*See* Dkt. 57] But throughout the
28 appeal, it became clear that Resolution's unique knowledge as the future owner of the

property and mine developer will be necessary in the proceedings dealing with other factors, including irreparable harm in the absence of preliminary relief. For example, during the en banc argument, the judges focused extensively on the issue of subsidence: when it would occur (if at all), where it would occur, and the extent of it. All of this goes to the immediate harm analysis. Resolution, by virtue of its extensive testing, research, and steps to prepare and develop the mine, is far and away the best party to speak on these issues.

Similarly, under the land exchange statute, access is tied to the safety conditions of mining operations, *see* 16 U.S.C. § 539p(i)(3), which of course depend on the activity and stage of the mine development or operations. Again, it is Resolution that can offer this information, not the Forest Service.

### C. The Court can alternatively grant permissive intervention.

Alternatively, Resolution should be permitted to intervene under Rule 24(b). As discussed in detail above and in Resolution's Motion, its request for intervention is timely. And it is uncontested that Resolution's defenses will involve many questions of law and fact in common with the main action. *See* Fed. R. Civ. P. 24(b)(l)(B) ("[T]he court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). [*See* Mot at 11; *see generally* Resp. (not disputing this argument)]

This Court has "broad" discretion to grant permissive intervention and considers factors such as "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

All of the *Spangler* factors weigh in favor of permitting Resolution to intervene. As explained in detail in Resolution's Motion, Resolution has significant, multiple types of property interests at stake and has invested over $2.3 billion in the copper mine project.

Importantly, Plaintiff disputes neither this fact nor the fact that the relief Plaintiff seeks would significantly impair those interests. Resolution plainly has standing to raise its defenses to Plaintiff's claims, and—as the landowner and mine developer—will offer perspective and knowledge to aid the Court in resolving the merits of the parties' claims and defenses. Intervention is thus warranted under Rule 24(b). *See, e.g.*, *Brumback v. Ferguson*, 343 F.R.D. 335, 346 (E.D. Wash. 2022) (permitting intervention under Rule 24(b) even if government adequately represented intervenor's interests because "[t]he expertise that the [intervenor] offers in the particular subject matter of this case is likely to be useful"); *Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2022 WL 4448320, at *3 (D. Ariz. Sept. 23, 2022) (similar).

### D. Conclusion

For the above reasons and those set forth in its Motion, Resolution asks this Court to lift the current stay for the limited purpose of ruling on Resolution's intervention request and to grant Resolution's Motion.

Respectfully submitted this 12th day of May, 2023.

**PERKINS COIE LLP**

By: /s/ Samantha J. Burke
Christopher D. Thomas
Diane M. Johnsen
Shane R. Swindle
Andrea J. Driggs
Janet M. Howe
Samantha J. Burke
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

*Attorneys for Defendant-Intervenor Resolution Copper Mining, LLC*

# CERTIFICATE OF SERVICE

☒   I hereby certify that on May 12, 2023, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

　　　　　　　　　　　　　　　　　　/s/ Shawne Murphy

162084173.

-11-