**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Apache Stronghold,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>United States of America, et al.,<br><br>　　　　　Defendants. | No.  CV-21-00050-PHX-SPL<br><br>**ORDER** |

Before the Court is Resolution Copper Mining LLC's Motion for Limited Lift of Stay and to Intervene (Doc. 109). The Motion asks the Court to lift the stay for the limited purpose of allowing intervention as of right or, alternatively, permissive intervention. For the following reasons, the Motion will be granted.

**I.    BACKGROUND**

On January 12, 2021, Plaintiff Apache Stronghold initiated this action seeking to prevent a congressionally authorized land exchange between the federal government and Resolution Copper Mining LLC ("Resolution"). (Doc. 1). The 2,422-acre parcel of Arizona land that the United States is to convey to Resolution is located with the Tonto National Forest and includes a sacred Apache ceremonial ground called Chi'chil Bildagoteel, known in English as "Oak Flat." (Doc. 1 ¶¶ 2, 30). Plaintiff alleges that the land transfer would violate it and its members First and Fifth Amendment rights, would violate the Religious Freedom Restoration Act, and would breach the federal government's trust and fiduciary duties to the Western Apache people. (Doc. 1).

On January 14, 2021, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to prevent the United States Department of Agriculture from publishing a Final Environmental Impact Statement ("FEIS"), which would trigger a 60-day period to complete the land exchange. (Doc. 7). On February 12, 2021, following full briefing and a hearing, the Court denied Plaintiff's Motion. (Doc. 57). Plaintiff promptly filed an interlocutory appeal. (Doc. 59). On May 12, 2021, the Court stayed this action pending disposition of the appeal, and the case has remained stayed since. (Doc. 81). The Ninth Circuit recently reheard the case *en banc*. (Doc. 102).

On March 1, 2021, the U.S. Forest Service rescinded the FEIS to engage in further consultation and analysis. (Doc. 80 at 2–3 & n.1). The land exchange will not occur until a new FEIS is published, which the federal government has represented is expected by "early summer." (Doc. 106 at 2). This Court has ordered the Forest Service to provide 60 days' notice to Plaintiff's counsel, the public, and the Court before the republication of a FEIS for the land exchange at issue. (Doc. 81). No such notice has yet been provided.

## II.   INTERVENTION AS OF RIGHT

To intervene as of right, a non-party must establish four elements:

> (1) the application must be timely; (2) the applicant must have a significantly protectable interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impeded the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court.

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (internal quotation marks omitted). The proposed intervenor bears the burden of establishing each element, but the Ninth Circuit has "repeatedly instructed that the requirements for intervention are to be broadly interpreted in favor of intervention." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016). Here, Plaintiff argues that Resolution has not established the first or fourth elements.

### a. Timeliness

The timeliness of a motion to intervene "hinges on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (internal quotation marks omitted)). The three factors are assessed "by reference to the crucial date when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.* (internal quotation marks omitted).

First, "[t]he 'stage of proceeding' factor uses a nuanced, pragmatic approach to examine whether the district court has substantively—and substantially—engaged the issues in the case." *Id.* at 826 (internal quotation marks omitted). The Court must consider substance over form, and "[n]either the formal stage of the litigation (e.g., the pretrial stage), nor the length of time that has passed since a suit was filed is dispositive." *Id.* (internal citations and quotation marks omitted). Here, although the case was filed more than 28 months ago, it is still in the very early stages; Defendants have not filed answers and no discovery has been conducted. More importantly, although this Court did engage the issues of the case when it ruled on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, it has not made any final substantive rulings. A ruling on such a motion is, as the name suggests, preliminary in relation to the case as a whole. And litigation of that Motion is the only substantive litigation that has occurred before this Court. This factor therefore favors intervention.

Second, analysis of the prejudice factor is guided by one "key principle": "The only prejudice that is relevant is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Id.* at 825 (internal quotation marks omitted). In addition, "the fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Id.* (internal quotation marks omitted). Plaintiff argues that it would be prejudiced by Resolution's intervention shortly before the likely republishing

of the FEIS because if the FEIS is republished without the Ninth Circuit first halting the land transfer, Plaintiff "would need to seek emergency relief to prevent irreparable harm to its rights." (Doc. 112 at 5). Plaintiff apparently means to suggest that Resolution's intervention could so delay proceedings related to a renewed motion for preliminary injunctive relief that the Court could not provide a timely ruling. The Court sees no such risk, as the Court is certainly capable of resolving emergency relief proceedings in an efficient manner even when there are multiple parties involved. Moreover, even assuming that Resolution should have known of a need to intervene sooner, Plaintiff does not explain how the purported prejudice is a result of *that* delay. Plaintiff cites to *Garza v. County of Los Angeles*, but there, the proposed intervenor did not move to intervene until the case was "progress[ing] . . . to a close"—unlike here where the case is currently stayed at a preliminary stage and the FEIS that may prompt Plaintiff to seek further relief has yet to even be republished. 918 F.3d 763, 777 (9th Cir. 1990). There is no prejudice from any delay in Resolution's Motion to Intervene.

Finally, the Court considers the length of and reason for delay. "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Neither Plaintiff nor Resolution makes a clear argument as to when Resolution should have known its interests were not adequately protected, but even assuming that the delay dates back to the filing of the action, the delay was lengthy at 27 months, but was largely not without reason. For 24 of those months, the case has been stayed pending the Ninth Circuit's disposition of Plaintiff's interlocutory appeal. Resolution now filed its Motion to Intervene in light of the Ninth Circuit proceedings and in anticipation of the republication of the FEIS and further time-sensitive litigation. (Doc. 109 at 2). Even if Resolution delayed its intervention for a few months without reason, the delay caused no prejudice to the parties and the Court has only preliminarily engaged with the issues in this case. Accordingly, the Court finds that Resolution's Motion to Intervene is timely.

### b. Adequacy of representation by existing parties

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). Courts consider three factors when evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. If a proposed intervenor and an existing party "share the same ultimate objective, a presumption of adequacy of representation arises," which is rebuttable only by a "compelling showing of inadequacy of representation." *Citizens for Balanced Use*, 647 F.3d at 898 (internal quotation marks omitted).

Plaintiff argues that the presumption of adequacy arises because "Resolution and the United States share the same ultimate objective of defending the land transfer statute against each of Apache Stronghold's claims." (Doc. 112 at 7 (internal quotation marks omitted)). Resolution counters that "Defendants and Resolution have overlapping but distinct interests" because Defendants' interests include defending the federal government's constitutional power to manage its land, complying with congressional commands, and serving the needs of the public and their constituents, while Resolution's interest "is to develop the mine on this particular parcel of land and to protect its $2.3 billion investment in the project." (Doc. 113 at 8–9).

The Court finds Resolution's citation to *Southwest Center for Biological Diversity v. Berg* instructive. 268 F.3d 810 (9th Cir. 2001). There, developers sought to intervene in a lawsuit brought by environmental groups against certain federal officers and others. *Id.* at 814. The environmental groups challenged the validity of an agreement and permit for certain development projects that would affect several protected species. *Id.* The Ninth

Circuit held that even if the presumption of adequacy applied, it was rebutted because the developers and defendants did "not have sufficiently congruent interests." *Id.* at 823. Specifically, the court found that the defendants' considerations were "broader than the profit-motives animating developers" and that the defendants could not be expected to protect the developers' private interests. *Id.* Thus, the Ninth Circuit concluded that "[t]he interests of the government and private sector may diverge" such that intervention was warranted. *Id.* at 823–24.

Similarly, here, even if Defendants and Resolution have the same ultimate objective in defending the land transfer, as Plaintiff argues, Resolution may have private interests that the federal government does not share and cannot represent. Like in *Southwest Center*, Plaintiff here is challenging a government action that would redound specifically to the benefit of Resolution. Although the challenged action here is a land transfer mandated by Congress as opposed to the development agreement at issue in *Southwest Center*, it is still true that Defendants' public considerations in carrying out the action are different from Resolution's private, profit-oriented ones. Those differing interests may lend themselves to different arguments and elements that the existing Defendants cannot or would not offer in this litigation. Accordingly, the Court finds that Resolution has established that its interests are not adequately represented and that it has a right to intervene.

### III.   PERMISSIVE INTERVENTION

Even if Resolution were not entitled to intervene as of right, the Court would permit its intervention. Courts may allow intervention by a non-party where there is "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019). In exercising that discretion, "a court must consider whether

intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019) (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989)).

In this case, it is plain that there is federal question jurisdiction and that Resolution's defenses involve common questions of law and fact, and Plaintiff does not dispute those elements. Moreover, the Court has found that Plaintiff's Motion was timely, so all the requisite elements are met. The Court also finds that Resolution's intervention will not cause undue delay or prejudice, that its interests may not be adequately represented by Defendants, and that Resolution's intervention is warranted.

### IV.     CONCLUSION

Finding that Resolution is entitled to intervene, the Court will lift the stay for the limited purpose of granting the Motion to Intervene. The stay otherwise remains in effect. Accordingly,

**IT IS ORDERED** that Resolution Copper Mining LLC's Motion for Limited Lift of Stay and to Intervene (Doc. 109) is **granted**.

**IT IS FURTHER ORDERED** that the stay is lifted for the sole purpose of issuing this Order and permitting Resolution's intervention; the stay and the other provisions of the Court's May 12, 2021 Order (Doc. 81) otherwise remain in effect.

**IT IS FURTHER ORDERED** that Resolution Copper Mining LLC's Lodged Answer (Doc. 110) is deemed filed.

Dated this 26th day of May, 2023.

Honorable Steven P. Logan
United States District Judge