Luke W. Goodrich, *pro hac vice*
(DC Bar #977736)
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Email: lgoodrich@becketfund.org

Michael V. Nixon, *pro hac vice*
(OR Bar #893240)
101 SW Madison Street #9325
Portland, OR 97207
Telephone: (503) 522-4257
Email: michaelvnixon@yahoo.com

Clifford Levenson (AZ Bar #358287)
5119 North 19th Avenue, Suite K
Phoenix, AZ 85015
Telephone: (602) 258-8989
Email: cliff449@hotmail.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION**

| | |
|---|---|
| Apache Stronghold,<br>    Plaintiff,<br>v.<br>United States of America, *et al.*,<br>    Defendants,<br>and<br>Resolution Copper Mining, LLC,<br>    Defendant-Intervenor. | No. 2:21-cv-00050-PHX-SPL<br><br>**Emergency Motion for Lift of Stay and for Injunction Pending Appeal**<br><br>**Oral Argument Requested**<br><br>**Relief Requested by May 14** |

  Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), Plaintiff Apache Stronghold respectfully requests that the Court lift the stay of this case (ECF 81) to enter a narrow, temporary injunction prohibiting Federal

1  Defendants from transferring Oak Flat to Defendant-Intervenor Resolution Copper during
2  the pendency of Apache Stronghold's Supreme Court appeal.
3      Apache Stronghold filed this action in January 2021, challenging the government's de-
4  cision to transfer a Native American sacred site, Oak Flat, to Resolution for purposes of
5  constructing a copper mine that will physically destroy the site—ending Apache religious
6  rituals forever. After this Court denied a preliminary injunction (ECF 57), the en banc
7  Ninth Circuit denied preliminary relief by a 6-5 vote. *Apache Stronghold v. United States*,
8  101 F.4th 1036 (9th Cir. 2024). The dissenting judges argued that the majority "tragically
9  err[ed]" by denying relief in conflict with controlling Supreme Court precedent. *Id.* at 1157
10 (Murguia, C.J., dissenting). One member of the majority expressed that the Supreme Court
11 might need to revisit the issue. *Id.* at 1109 (Nelson, J., concurring).
12     Apache Stronghold then filed a petition for a writ of certiorari, which is still pending at
13 the U.S. Supreme Court. Briefing on the petition was completed on November 6, 2024, and
14 the Supreme Court has now "relisted" the petition for consideration at its private confer-
15 ences twelve times—including at its conference this Friday, April 25—indicating that the
16 case is still under active consideration. *See Apache Stronghold v. United States*, No. 24-
17 291 (U.S.).
18     Nevertheless, on April 17, 2025, the government notified this Court that it intends to
19 move forward with the land transfer—by publishing the Final Environmental Impact State-
20 ment (FEIS) that triggers a mandate to transfer Oak Flat—as early as **June 16, 2025**. ECF
21 148. The government's notice indicates that it may publish the FEIS and transfer Oak Flat
22 even if Apache Stronghold's petition remains pending or has been granted. *Id.*
23     To preserve the status quo and protect the Supreme Court's ability to review the case,
24 Apache Stronghold asked the government if it would agree to refrain from publishing the
25 FEIS and transferring Oak Flat until after the conclusion of its Supreme Court appeal. But
26 the government refused. Accordingly, Apache Stronghold now asks this Court for a nar-
27 row, temporary injunction that would preserve the status quo—and prevent the government

from taking the definitive step of transferring Oak Flat to Resolution—until after the Supreme Court completes its review. Defendants oppose this motion.

Because Defendants claim the need to move forward quickly, and because the parties have already extensively briefed the merits of this issue in this Court, the Ninth Circuit, and the Supreme Court, Apache Stronghold requests the following expedited briefing schedule:

1. April 24, 2025 (today): Apache Stronghold's motion for injunction pending appeal;
2. April 28, 2025 (4 days): Defendants' responsive memoranda;
3. April 30, 2025 (2 days): Apache Stronghold's reply memorandum.

Apache Stronghold also requests opportunity for oral argument—which Apache Stronghold proposes could occur on May 7—and a ruling by May 14 (14 days after close of briefing), to permit the opportunity for any necessary appeals before the potential transfer date of June 16, 2025. Apache Stronghold also hereby incorporates by reference its legal arguments, reasoning, and exhibits from its prior submissions in this Court, the Ninth Circuit, and the Supreme Court. *See* ECF 7, 23, 51, 61; *Apache Stronghold v. United States*, No. 21-15295 (9th Cir.); *Apache Stronghold v. United States*, No. 24-291 (U.S.).

Dated: April 24, 2025

Respectfully submitted,

/s/ Luke W. Goodrich
Luke W. Goodrich, *pro hac vice*
(DC Bar #977736)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Email: lgoodrich@becketfund.org

## MEMORANDUM OF POINTS AND AUTHORITIES

For centuries, Western Apaches have centered their worship on a sacred site in Arizona called *Chi'chil Biłdagoteel*, or Oak Flat. Oak Flat is the Apaches' direct corridor to the Creator and the site of sacred ceremonies that cannot take place elsewhere. As this Court found and the en banc Ninth Circuit recognized: "The spiritual importance of Oak Flat to the Western Apaches cannot be overstated[.]" ECF 57 at 11; *accord Apache Stronghold v. United States*, 101 F.4th 1036, 1044 (9th Cir. 2024) (en banc) ("indispensable").

Yet the government is now planning to transfer Oak Flat to Defendant-Intervenor Resolution Copper for a mine that will admittedly obliterate the site, swallowing it in a massive crater and ending sacred Apache rituals forever. "It is undisputed that this subsidence will destroy the Apaches' historical place of worship, preventing them from ever again engaging in religious exercise at their sacred site." *Apache Stronghold*, 101 F.4th at 1129 (Murguia, C.J., dissenting).

Apache Stronghold challenged the transfer and destruction of Oak Flat as a violation of the Religious Freedom Restoration Act ("RFRA") and the Free Exercise Clause. In a fractured en banc ruling spanning 246 pages and cobbled together from two separate 6-5 majorities, the Ninth Circuit denied preliminary injunctive relief. *Apache Stronghold*, 101 F.4th at 1043-44 (per curiam). Five dissenting judges argued that the majority "tragically err[ed]" by rejecting "RFRA's plain text" contrary to "the Supreme Court's" precedent. *Id.* at 1157-58 (Murguia, C.J., dissenting). A sixth dissenting judge, at an earlier stage of the appeal, likewise concluded that Apache Stronghold's claims are "obvious[ly]" likely to succeed. *Apache Stronghold v. United States*, No. 21-15295, 2021 WL 12295173, at *2 (9th Cir. Mar. 5, 2021) (Bumatay, J., dissenting). Thus, a total of twelve Ninth Circuit judges have considered the merits of Apache Stronghold's RFRA claim—and they have divided 6-6. One of the six judges in the en banc majority also expressed "reservations" with aspects of the majority opinion and noted that "perhaps it is time for the Supreme Court" to step in. *Apache Stronghold*, 101 F.4th at 1108-09 (Nelson, J., concurring).

1   Apache Stronghold then filed a petition for a writ of certiorari, which is currently pending at the U.S. Supreme Court. Briefing on the petition was completed on November 6, 2024, and the Court has relisted the petition for consideration at its private conferences twelve separate times—including at its conference tomorrow, April 25. *Apache Stronghold v. United States*, No. 24-291 (U.S.). Apache Stronghold is aware of only five other petitions in the last ten years that have been relisted for twelve or more conferences. All were granted. *Dobbs v. Jackson Women's Health Org.*, 141 S. Ct. 2619 (2021) (No. 19-1392) (mem.) (grant); *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 582 U.S. 929 (2017) (No. 16-111) (mem.) (grant); *Sykes v. United States*, 584 U.S. 928 (No. 16-9604) (mem.) (grant, vacate, remand); *Andrus v. Texas*, 590 U.S. 806 (2020) (No. 18-9674) (per curiam) (grant, vacate, remand); *Hamm v. Smith*, 604 U.S. 1 (2024) (No. 23-167) (per curiam) (grant, vacate, remand). At the very least, the repeated relisting of the petition indicates that the Supreme Court is still considering the petition.

Despite this ongoing process, the government on April 17 notified this Court that it intends to forge ahead with the land transfer, saying it plans to publish the Final Environmental Impact Statement (FEIS) that will trigger the transfer as soon as **June 16, 2025**.

To preserve the status quo and to protect the Supreme Court's ability to consider the petition, Apache Stronghold asked the government if it would agree to refrain from publishing the FEIS and transferring Oak Flat until after the Supreme Court completes its review. But the government refused. Accordingly, Apache Stronghold now seeks a narrow, temporary injunction that would preserve the status quo while the Supreme Court completes its review. *See* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8(a)(1)(C); *see also Newton v. Consol. Gas Co. of N.Y.*, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court.").

Apache Stronghold satisfies all four requirements for injunctive relief. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). First, it is likely to succeed—and has at the very least shown

5

"serious questions on the merits," *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (en banc) ("*FCA*")—as demonstrated by the 6-6 split among Ninth Circuit judges. Second, Apache Stronghold is likely to suffer irreparable harm in the absence of preliminary relief—namely, loss of access to Oak Flat, complete physical destruction of their sacred site, and permanent eradication of centuries-old religious practices. Third, the balance of equities sharply favors Apache Stronghold, which faces an imminent, devastating, and irretrievable loss of rights, and not the government, whose own decades-long delays indicate there is no urgency to this transaction. Finally, the public interest favors an injunction protecting fundamental rights and preventing precipitous federal action that could thwart orderly judicial review.

## FACTUAL BACKGROUND

Western Apaches have worshipped at Oak Flat for centuries. ECF 57 at 11. Oak Flat is a direct corridor to their Creator and the site of essential religious practices that cannot take place elsewhere. *Id.* at 12. The site includes old-growth oak groves, sacred springs, burial locations, and a singular concentration of archaeological sites testifying to its persistent use for the past 1,500 years. *See generally* Br. of San Carlos Apache Tribe et al. as Amici Curiae, *Apache Stronghold v. United States*, No. 24-291 (U.S. Oct. 15, 2024), https://perma.cc/WCG3-TMS8. Oak Flat is included in the National Register of Historic Places and has been protected from mining for 70 years. Pet. for Writ of Cert. at 13, *Apache Stronghold v. United States*, No. 24-291 (U.S. Sept. 11, 2024), https://perma.cc/H7DR-SE7X ("Cert Pet.").

In 1995, copper was discovered beneath Oak Flat. *Id.* From 2005 to 2013, congressional supporters of Resolution introduced at least twelve standalone bills to transfer Oak Flat to Resolution. *Id.* Each failed. Lacking the votes for a standalone bill, Senators McCain and Flake in 2014 attached the land-transfer bill to the must-pass National Defense Authorization Act, which authorizes funding for the U.S. military. *Id.* at 14. The bill revokes the

6

presidential orders protecting Oak Flat from mining and authorizes the transfer of Oak Flat to Resolution Copper for a copper mine. *Id.*; ECF 57 at 1.

The government admits the mine will destroy Oak Flat, causing it to "subside" into a massive crater nearly two miles wide and 1,100 feet deep. *See, e.g.*, *Apache Stronghold*, 101 F.4th at 1047-48 (Collins, J.); ECF 51 at 16. The mine will completely destroy the old-growth oak groves, sacred springs, burial grounds, religious and cultural artifacts, and irreplaceable sites used for sacred rituals. Cert Pet. at 15. The government admits these effects will be "immediate, permanent, and large in scale." *Id.* As a result, "[r]eligious worship will be impossible," and the Apaches will never again be able to worship at Oak Flat. *Apache Stronghold*, 101 F.4th at 1145 (Murguia, C.J., dissenting); *id.* at 1131-32 ("tribal members would irreversibly lose access to the area for religious purposes," resulting in "an indescribable hardship to Indigenous peoples" (cleaned up)).

Under the land-transfer statute, the Secretary of Agriculture must prepare an FEIS for the proposed mine and then "convey all right, title, and interest" in Oak Flat to Resolution Copper within "60 days" of publishing the FEIS. Pub. L. No. 113-291, § 3003(c)(9), (10).

**PROCEDURAL HISTORY**

On January 4, 2021, the Forest Service announced imminent publication of the FEIS. ECF 1 ¶ 41. Apache Stronghold sued on January 12, 2021, seeking to enjoin the transfer and destruction of Oak Flat as a violation of, *inter alia*, RFRA and the Free Exercise Clause. *See* ECF 1. The Forest Service published the FEIS three days later, triggering the 60-day clock to complete the land transfer. ECF 57 at 2.

This Court denied preliminary and emergency relief, relying on *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1063 (9th Cir. 2008) (en banc). ECF 57 at 15-18. Apache Stronghold then moved for emergency relief from the Ninth Circuit, and this Court stayed further proceedings pending appeal. ECF 81.

On March 1, 2021, six hours before the government's response to Plaintiff's emergency motion was due, the Forest Service rescinded the FEIS to "ensure the agency's compliance

7

with federal law."[1] The government then argued the injunction should be denied because the harm was no longer "imminent." CA9 ECF 18-1 at 1.

By a 2-1 vote, a motions panel denied emergency relief, agreeing that immediate relief was no longer necessary. *Apache Stronghold*, 2021 WL 12295173. Judge Bumatay dissented, concluding that Apache Stronghold "clearly established that the religious exercise of the Western Apaches will be substantially burdened by the Government's actions," and thus "has established a strong likelihood of success on the merits." *Id.* at *3, *4 n.4, *7 (Bumatay, J., dissenting).

On plenary review, another divided panel denied relief, with the majority deeming itself bound to reject the RFRA claim under *Navajo Nation*. *Apache Stronghold v. United States*, 38 F.4th 742 (9th Cir. 2022). Judge Berzon dissented, calling the majority's analysis "illogical," "incoheren[t]," "disingenuous," and "absurd." *Id.* at 774, 776, 783.

On rehearing en banc, the Court splintered into two different 6-5 majorities, issuing seven opinions spanning 246 pages. One majority, in opinions by Chief Judge Murguia and Judge Nelson, overruled *Navajo Nation*, concluding that government actions "[p]reventing access to religious exercise" constitute a "substantial burden" under RFRA's "plain meaning." *Apache Stronghold*, 101 F.4th at 1043 (per curiam); *id.* at 1145 (Murguia, C.J.); *id.* at 1092 (Nelson, J.) ("ordinary meaning"). A different majority, however, in opinions authored by Judges Collins and Nelson, held that the plain meaning of "substantial burden" does not apply in cases involving "the Government's management of its own land and internal affairs." *Id.* at 1053 (Collins, J.).

Five dissenting judges opined that the majority "tragically err[ed]" by deviating from "RFRA's plain text," the decisions of "[s]everal other circuits," and "the Supreme Court's" precedent, *id.* at 1144 n.13, 1157-58 (Murguia, C.J., dissenting), since "the complete obliteration of the land … obviously imposes a substantial burden on the Apache's religious

---

[1] USDA, Forest Service, *Resolution Copper Project & Land Exchange Environmental Impact Statement: Project Update* (Mar. 1, 2021), https://perma.cc/RD6A-EQZZ.

exercise," *id.* at 1158 (Lee, J., dissenting). Judge Nelson, the swing vote in both majorities, expressed "reservations" about the majority's analysis and suggested "it is time for the Supreme Court to revisit" the relevant precedent. *Id.* at 1108-09 (Nelson, J., concurring).

Apache Stronghold then sought review by the U.S. Supreme Court. The Supreme Court has relisted the petition for consideration at its private conferences twelve times—including for its conference tomorrow, April 25—indicating that the Court is actively considering the petition.

On April 17, 2025, the government notified this Court that it intends to publish the new FEIS in as little as "60 days"—*i.e.*, June 16, 2025. ECF 148. The government noted that it "may" reevaluate its timeline if Apache Stronghold's certiorari petition "remains pending or has been granted" by June 16, but it did not commit to doing so (*id.*)—meaning the government reserves the right to publish the FEIS and transfer Oak Flat even if the petition has been granted. And because the transfer must occur within 60 days of publishing the FEIS, and may occur even simultaneously with publication, the government could transfer Oak Flat to Resolution as early as June 16, 2025.

On April 18, Apache Stronghold informed the Supreme Court of the government's notice. Pet'r's Letter, *Apache Stronghold v. United States*, No. 24-291 (U.S. Apr. 18, 2025). Apache Stronghold also contacted the government via email to request that it "agree to publish any FEIS no earlier than 60 days after entry of the Supreme Court's judgment (if the petition is granted) and no earlier than 60 days after the petition is denied (if the petition is denied)." The government replied via email that it "do[es] not agree to [the] proposal." In a telephone conference, the government's counsel further informed Plaintiff's counsel that the government wants to consummate the land exchange without delay.

## LEGAL STANDARD

An injunction pending appeal is warranted when the moving party has demonstrated that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an

9

injunction is in the public interest. *Winter*, 555 U.S. at 20. These injunction factors are evaluated "on a sliding scale, such 'that a stronger showing of one element may offset a weaker showing of another.'" *FCA*, 82 F.4th at 684. Where "the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id.* Serious questions "need not promise a certainty of success, nor even present a probability of success"; instead, they need only indicate "a fair chance of success on the merits." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024).

Due to the importance of preserving the status quo when a plaintiff has raised serious legal questions and faces a grave threat of irreparable harm, a court may enter an injunction pending appeal even after denying a preliminary injunction. *See, e.g.*, *Am. Beverage Ass'n v. City & County of San Francisco*, No. 15-cv-3415, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016). Such relief is "especially appropriate" where, as here, the "subject matter of the dispute will be destroyed or otherwise altered" in a way that undermines a "pending appeal." *MediNatura, Inc. v. FDA*, No. 20-cv-2066, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021). And, courts have regularly granted narrow, temporary relief to preserve an appellate court's jurisdiction and allow time for orderly appellate review. *See, e.g.*, *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 3:20-cv-290, 2021 WL 454280, at *4 (D. Alaska Feb. 6, 2021) (granting "brief and limited injunction" to avoid "irreparable environmental consequences"; collecting cases); *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1134 (E.D. Cal. 2011) (granting injunction pending appeal prohibiting "timber harvesting activities" in certain areas of "particularly sensitive habitat in which logging operations had not yet commenced"); *Native Ecosystems Council v. Kimbell*, No. 05-110, 2005 WL 8167434, at *6-7 (D. Mont. Nov. 21, 2005) (granting injunction pending appeal after denying preliminary injunction; "[h]olding the Project" during appeal "is a prudent measure to preserve Plaintiffs' right to challenge the Project's effects on the environment").

# ARGUMENT

***Serious questions on the merits.*** When the "balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *FCA*, 82 F.4th at 684. Apache Stronghold easily satisfies this standard, as evidenced by the fact that six of the twelve Ninth Circuit judges to address the merits have agreed with Apache Stronghold.

Indeed, at every stage of the Ninth Circuit's proceedings, the court was sharply divided. At the emergency stage, Judge Bumatay concluded that Apache Stronghold "clearly established" an "obvious" substantial burden and demonstrated "a strong likelihood of success on the merits." *Apache Stronghold*, 2021 WL 12295173, at *2-3, *4 n.4, *7 (Bumatay, J., dissenting). At the panel stage, Judge Berzon deemed the ruling against Apache Stronghold "illogical," "incoheren[t]," "disingenuous," and "absurd." *Apache Stronghold*, 38 F.4th at 774, 776, 783. At the en banc stage, five dissenters said the majority "tragically err[ed]" by deviating from "RFRA's plain text" and Supreme Court precedent. *Apache Stronghold*, 101 F.4th at 1144 n.13, 1157-58 (Murguia, C.J., dissenting). Even the en banc majority overruled the circuit's leading precedent in this area (*Navajo Nation*) and divided over the proper rationale for resolving the case, *see id.* at 1065 (Bea, J., dissenting in part and concurring in part), while Judge Nelson expressed "reservations" about the majority's analysis and conceded that the dissent's interpretation of RFRA was at least "plausible," *id.* at 1108, 1110 (Nelson, J., concurring).

With good reason. The majority didn't dispute that the government's actions will "literally prevent" Apaches from worshipping at Oak Flat. *Id.* at 1052 (majority). Nor did it dispute that preventing religious exercise is a substantial burden under RFRA's "ordinary meaning." *Id.* at 1092, 1100 (Nelson, J., concurring); *see also id.* at 1043 (per curiam). Instead, it held that RFRA's ordinary meaning doesn't apply in cases involving "the Government's management of its own land." *Id.* at 1053 (majority).

11

That reading, as the dissent pointed out, contradicts RFRA's plain text. That text makes no "special exception" for land-use decisions. *Id.* at 1153 (Murguia, C.J., dissenting). Rather, the statute "is explicit that" it "applies to all *Federal law*, and the implementation of that law, whether statutory or otherwise." *Id.* (quoting 42 U.S.C. § 2000bb-3(a)). It even specifies that protected "[r]eligious exercise" includes "the use of real property for the purpose of religious exercise." *Id.* (citing 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(B)). Meanwhile, under the statute's "plain meaning," the government "substantially burdens" religious exercise when it "restricts" that exercise "to a 'considerable amount.'" *Id.* at 1136. That definition "clearly reaches" instances "where the government prevents a person from engaging in religious exercise," including by destroying the sacred site on which that exercise must take place. *Id.* at 1145-46. Indeed, "[t]he Western Apaches' exercise of religion at Oak Flat will not" just be "burdened"—"it will be obliterated." *Apache Stronghold*, 2021 WL 12295173, at *4 (Bumatay, J., dissenting).

The en banc panel's reading also conflicts with Supreme Court precedent. The panel located its special rule for land use in the Supreme Court's pre-RFRA decision in *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439 (1988), which the panel said is "subsum[ed]" in RFRA. *Apache Stronghold*, 101 F.4th at 1063. But "the Supreme Court has rejected the notion that RFRA 'merely restored'" earlier free-exercise law, instead holding that the statute "goes 'far beyond what … is constitutionally required.'" *Id.* at 1134, 1138 (Murguia, C.J., dissenting) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014)). And as for *Lyng* itself, the Court has repeatedly "treated [it] as reflecting not any special" rule for "measuring the extent of burdens" in the land-use context—which might be relevant under RFRA—"but as concerning the type of neutral and generally applicable laws not subject to" strict scrutiny under the Free Exercise Clause—a consideration that RFRA expressly deems irrelevant. *Id.* at 1150-51; *see* 42 U.S.C. §§ 2000bb(a)(2), 2000bb-1(a) (RFRA applies regardless whether government action is "neutral" or stems from a "rule of general applicability"); *see also Trinity Lutheran Church*

*of Columbia, Inc. v. Comer*, 582 U.S. 449, 460 (2017) ("In recent years," the Court has "rejected free exercise challenges" where "the laws in question have been neutral and generally applicable"—citing *Lyng* as the leading "example.").[2]

In any event, in *Lyng*, "[n]o sites where specific rituals t[ook] place were to be disturbed," while here, "[t]he land in this case will be all but destroyed," "Oak Flat will no longer be accessible as a place of worship," and the Apaches' religious exercise will be not only "frustrate[d]" but "eviscerated"—rendered objectively "impossible." *Apache Stronghold*, 101 F.4th at 1146-48 (Murguia, C.J., dissenting) (quoting first *Lyng* and then this Court's findings). So *Lyng* not only "did not analyze" RFRA's "'substantial burden' concept" but is also distinguishable on its facts. *Id.* at 1146-49.

The majority's decision also conflicts with six other circuits, all of which recognize that a substantial burden plainly exists "where the government completely prevents a person from engaging in religious exercise." *Id.* at 1144 n.13, 1146; *see also* Cert Pet. at 29-32. As these circuits have recognized, when the "government controls access to religious locations and resources"—as in prison, in the military, or in cases involving federal land—the government can substantially burden religious exercise not merely by penalizing it but also by preventing it from occurring. *Apache Stronghold*, 38 F.4th at 775-76 (Berzon, J., panel dissent); Cert Pet. at 31-32. That is what is happening here.

All of this indicates that Apache Stronghold has a strong likelihood of success on the merits. At the very least, it has shown "'serious questions' on the merits"—which is all that is required here. *FCA*, 82 F.4th at 684. Indeed, the fact that the Supreme Court has relisted

---

[2] Strikingly, the en banc panel majority initially rested its reasoning on the notion that the Supreme Court "has not said, and could not have said, that *Lyng* was *itself* a case involving a neutral and generally applicable law." *Apache Stronghold v. United States*, 95 F.4th 608, 625 (9th Cir. 2024) (en banc). It later had to issue an amended opinion revising this statement, because the Supreme court in *Trinity Lutheran* said precisely that. 582 U.S. at 460. The amended opinion then dismissed *Trinity Lutheran*'s statement as "dicta." *Apache Stronghold*, 101 F.4th at 1042.

13

Apache Stronghold's cert petition twelve times indicates that the Supreme Court is actively considering these serious questions. *Supra* p.5.

**Irreparable Harm.** Apache Stronghold also faces a grave risk of irreparable harm. "Irreparable harm is relatively easy to establish in a First Amendment case." *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019). This is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *FCA*, 82 F.4th at 694. Here, it is undisputed that the land exchange will result in the permanent, physical destruction of Oak Flat. As a result, "[r]eligious worship will be impossible." *Apache Stronghold*, 101 F.4th at 1145 (Murguia, C.J., dissenting). That harm is indisputably irreparable.

Nor is the harm limited to the ultimate completion of the mine and final destruction of Oak Flat. The government has admitted that "the min[ing activity planned by Resolution Copper] would cause '*immediate*, permanent, and large … scale' destruction of 'archaeological sites, tribal sacred sites, [and] cultural landscapes.'" *Id.* at 1131 (emphasis added) (quoting USDA, U.S. Forest Service, *Resolution Copper Project and Land Exchange Environmental Impact Statement*, 2-FEIS-789 (Jan. 15, 2021), https://perma.cc/N7MF-6EPL). But "even if the site won't be entirely cratered immediately after conveyance," "[o]nce the land is transferred, the Western Apaches will suffer immediate, irreparable harm." *Apache Stronghold*, 2021 WL 12295173, at *5 (Bumatay, J., dissenting). That destruction will "undoubtedly" begin with "preparatory activities"—like "constructing 'new shafts,' 'new roads,' a 'water treatment plant,' an 'admin building,' and 'substations'"— that themselves "are likely to degrade the Oak Flat environment" and "cause irreparable damage." *Id.* (quoting 1-FEIS-57, Fig. 2.2.2-3).

Even setting physical destruction aside, the transfer immediately makes Oak Flat "private property" that is "no longer … subject to [federal law] or Forest Service management that provides for tribal access." 3-FEIS-824. That gives Resolution power to exclude Apache Stronghold's members from Oak Flat and to restrict the timing and location of

religious ceremonies that regularly take place at Oak Flat and must take place at specific times and locations throughout the site. *See* Pike Decl., ECF 7-3 ¶ 10 (sunrise ceremonies); Hoffman Decl., ECF 7-1 ¶ 10 (Holy Grounds ceremonies); Br. of San Carlos Apache Tribe et al. as Amici Curiae at 5-12, *Apache Stronghold v. United States*, No. 24-291 (U.S. Oct. 15, 2024), https://perma.cc/WCG3-TMS8. And such restrictions will be harder or impossible to challenge, since at that point "Oak Flat will be private property no longer subject to RFRA and other federal protections." *Apache Stronghold*, 95 F.4th at 717 (Murguia, C.J., dissenting); *see also Apache Stronghold*, 2021 WL 12295173, at *6 (Bumatay, J., dissenting) ("[O]nce the land leaves the Government's hands, the Western Apaches likely cannot bring a RFRA or Free Exercise claim against Resolution Copper should the venture burden or extinguish their ability to worship or access Oak Flat.").

Lastly, once the transfer is completed and mining prep work begins, this Court may lose equitable authority to rescind the transfer later. That is precisely what happened in *Kettle Range Conservation Group v. United States Bureau of Land Management*, 150 F.3d 1083, 1087 (9th Cir. 1998) (per curiam), where the Ninth Circuit held that the district court "was without authority to rescind" a land transfer "after the new owners have taken certain irreversible actions," such as "clearcutting the trees." As a concurring judge warned: "[J]udges must be particularly sensitive to the practical consequences of their initial action or inaction [on requests for injunctive relief *pendente lite*] … to ensure that the court does not inadvertently lose its ability to enforce an important Congressional mandate." *Id.* at 1087-88 (Reinhardt, J., concurring). That is a serious risk here.

***Balance of Hardships and Public Interest.*** The balance of hardships and public interest also decisively favor relief. Indeed, when a party "'raise[s] serious First Amendment questions,' that alone 'compels a finding that the balance of hardships tips sharply in [its] favor.'" *X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024) (alterations in original) (quoting *FCA*, 82 F.4th at 695).

15

A narrow, temporary injunction would cost the government mere days on a decades-long, decidedly non-urgent project. The land transfer was proposed twenty years ago and authorized by statute ten years ago; yet the government waited six years after the statute to publish the first FEIS. Then, after the government withdrew the FEIS to evade the Ninth Circuit's emergency review, it let four more years pass. Meanwhile, the delta between when the government plans to publish the FEIS (June 16) and when the Supreme Court is likely to resolve Plaintiff's petition (by its summer recess in early July) is less than a month. Given all this, there can be no serious argument that waiting a few days to let the Supreme Court complete its review would cause the government any hardship. *Cf. Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100-01 (9th Cir. 2006) (granting injunction pending appeal where there was no prospect "injunction w[ould] reduce significantly any future economic benefit that may result from the mine's operation").

By contrast, if the transfer is completed, the mine "will close off a portal to the Creator forever and will completely devastate the Western Apaches' spiritual lifeblood." ECF 57 at 12. In the government's words, nothing can "replace or replicate the tribal resources and traditional cultural properties that would be destroyed." 3-FEIS-856. Simply put: a slight delay preserving the status quo costs the government nothing; plowing ahead costs the Apaches everything.

Nor is there any question about the public interest. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *FCA*, 82 F.4th at 695. And "Congress has given RFRA similar importance by subjecting all subsequent congressional enactments to a strict scrutiny standard of review unless those enactments explicitly exclude themselves from RFRA." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013) (en banc), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). In short, it is not "in the public's interest" to permit the government "to violate the requirements of federal law." *Valle del Sol v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

# CONCLUSION

This case involves a matter of existential importance to Western Apaches. If Oak Flat is destroyed, religious practices at Oak Flat that date back at least a millennium are gone forever—and with them, the bedrock of Western Apache religious identity. The merits of this case have sharply divided the Ninth Circuit, with six of twelve judges to address the case concluding that Apache Stronghold should prevail. And the Supreme Court is on the cusp of deciding whether to grant a pending petition for certiorari. Given all that—along with the government's own actions generating years of delay—a brief injunction to maintain the status quo is warranted to avoid irreversible harm and to ensure orderly judicial review.

Dated: April 24, 2024

Respectfully submitted,

/s/ Luke W. Goodrich
Luke W. Goodrich, *pro hac vice*
(DC Bar #977736)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Email: lgoodrich@becketfund.org